2006 ND 240

**Carol A. EIFERT, Plaintiff and Appellant**

v.

**Michael L. EIFERT, Defendant and Appellee**

No. 20060069.

Supreme Court of North Dakota.

Nov. 28, 2006.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, ND, for plaintiff and appellant.

Jennifer M. Stanley, McGee, Hankla, Backes & Dobrovolny, Minot, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Carol Eifert appeals the district court's divorce judgment giving Michael Eifert physical custody of their two children and setting her minimum visitation at every other Christmas and six weeks during the summer. We affirm.

I

[¶ 2] In 2001, when Carol Eifert was stationed in Texas with the Air Force, the Eiferts separated after three years of marriage. The parties have two unmarried minor children. Michael Eifert moved back to Minot, and Carol Eifert remained in Texas until she was assigned to a base in Honduras. That assignment did not allow family to accompany service members. The district court noted that the parties informally agreed, in 2001, to place both children temporarily with Michael Eifert's sister, Michelle Hoffart, and her family in Dickinson; however, the children remained with the Hoffarts until 2004. Michelle Hoffart testified that the parties asked her to take care of their children because they were having marital problems. After caring for the children for nearly four years, Michelle Hoffart petitioned the district court for permanent coguardianship of the children, but that request was denied. Michael Eifert then moved the children to his parent's home in Minot. The couple was divorced in 2005. In awarding custody to Michael Eifert, the district court found that child custody factors (d), (e), and (m) favored him while none favored Carol Eifert. He resides in Minot with his parents. She lives in California with her parents.

[¶ 3] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const.

art. VI, §§ 2, 6, and N.D.C.C. §§ 27–02–04 and 28–27–01.

## II

[¶ 4] On appeal, Carol Eifert argues the district court erred in its application of the "best interests" test by unfairly focusing on the role of third parties rather than Michael Eifert's alleged lack of involvement. She also argues that the district court erred in its findings by granting only minimal visitation.

[¶ 5] We exercise a limited review of child custody awards in divorce cases. *Stoppler v. Stoppler*, 2001 ND 148, ¶ 7, 633 N.W.2d 142. We will not set aside a custody determination, which is a finding of fact, unless it is clearly erroneous. *Id.* Before we deem findings of fact clearly erroneous, we must understand the basis for the district court's decision. *Huntress v. Griffey*, 2002 ND 160, ¶ 8, 652 N.W.2d 351. "A reviewing court will not retry a custody case or substitute its judgment for that of the trial court, if the district court's determination is supported by evidence in the record." *Ackerman v. Ackerman*, 1999 ND 135, ¶ 8, 596 N.W.2d 332. This is especially true in the difficult case of deciding child custody between two parents not found unfit. *See Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 12, 700 N.W.2d 711.

[¶ 6] Section 14–09–06.1, N.D.C.C., governs the award of child custody. In making an initial custody determination, the district court must consider all 13 factors specified in N.D.C.C. § 14–09–06.2(1) when they apply. Although a separate finding is not required for each factor under N.D.C.C. § 14–09–06.2(1), the district court's findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the decision. *Huntress*, 2002 ND 160, ¶ 8, 652 N.W.2d 351.

[¶ 7] In awarding custody to Michael Eifert, the district court found factors (d), (e), and (m) favored him while none favored Carol Eifert.

## A

[¶ 8] Section 14–09–6.2(1)(d), N.D.C.C., addresses "[t]he length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity." This factor considers the "past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting. It also addresses the quality of that past environment, and the desirability of maintaining continuity." *Stoppler*, 2001 ND 148, ¶ 9, 633 N.W.2d 142.

[¶ 9] The district court focused on the nearly four years the children lived in Dickinson in "a safe, stable, and loving home" with Michelle Hoffart, Michael Eifert's sister. The district court found that Michael Eifert was able to maintain almost monthly visits with his children in Dickinson and spoke with them by telephone. The district court noted that Carol Eifert faced greater obstacles given her military service obligations. The district court totaled the amount of annual leave Carol Eifert spent with the children during their stay with the Hoffarts and found that she spent roughly 15 days with them in the first year, no time with them in the second year, and "a limited amount" during her third year. The district court did note that Carol Eifert communicated with the children via email and telephone. The district court did not calculate the time Michael Eifert actually spent with his children while living 180 miles away in Minot; however, it did find that Michael Eifert had satisfactorily cared for the children in the year before the divorce, "without significant financial support from Carol."

[¶ 10] The district court's finding that factor (d) favored Michael Eifert is not clearly erroneous.

### B

[¶ 11] Section 14–09–6.2(1)(e), N.D.C.C., addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home." Although overlap exists between factors (d) and (e), factor (e) uses a forward-looking approach to the stability of the family unit, its interrelations and environment, versus the backward-looking factor (d). *Stoppler*, 2001 ND 148, ¶¶ 9–12, 633 N.W.2d 142. Interaction and interrelationships with relatives and others contribute to the analysis under factor (e). *Schmidt v. Schmidt*, 2003 ND 55, ¶ 13, 660 N.W.2d 196. "Children need interaction and interrelationship with their parents, siblings, and other persons who may significantly affect the child's best interests." *Lapp v. Lapp*, 293 N.W.2d 121, 130 (N.D. 1980).

[¶ 12] The district court found that although both parties live with their respective parents and each set of grandparents would make a place for the children in their homes, the children's "bonded closeness to the Hoffarts and their children," which the district court found would likely continue, tipped factor (e) in favor of Michael Eifert. Furthermore, the district court reasoned that although the children could have the benefit of both sets of grandparents, the children "are no doubt closer to Michael's parents in whose home they lived since November 2004." According to the district court's findings, the Eifert children developed sibling relationships with the Hoffart children. The district court noted Michelle Hoffart's testimony that this sibling relationship would be certain to continue if Michael Eifert were awarded custody.

[¶ 13] The district court found that the potential for maintaining the relationship with the Hoffart family is best secured by the award of custody to Michael Eifert under this factor.

[¶ 14] The district court's finding that factor (e) favors Michael Eifert is not clearly erroneous.

### C

[¶ 15] Under section 14–09–6.2(1)(m), N.D.C.C., a district court considers "[a]ny other factors considered by the court to be relevant to a particular child custody dispute." A district court is "entitled to give appreciable weight" to the role of the extended family in the care of the parties' children. *Corbett v. Corbett*, 2001 ND 113, ¶ 9, 628 N.W.2d 312; *accord Cox v. Cox*, 2000 ND 144, ¶ 24, 613 N.W.2d 516 (noting the father's "strong support system in his family," including his aunt and uncle that were "willing[ ] to assist and support him in parenting the child"); *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 201 (N.D.1995) (noting the importance of extended family who have "taken up the slack" in daily care of the children when necessary); *Bashus v. Bashus*, 393 N.W.2d 748, 751–52 (N.D.1986) (noting that the children's grandmother cared for the children while the custodial parent was at work).

[¶ 16] The district court noted its concern that Carol Eifert's plans to attend college full-time in California to earn an engineering degree, while admirable, would further impinge on her relationship with her children. Furthermore, the district court noted the absence of any record of daily care of the children by Carol Eifert, while highlighting Michael Eifert's care of the children—at least since 2004. According to the district court, the children are doing well with Michael Eifert and his parents in Minot. The district

court noted one witness's testimony that "Carol has had the title of 'mother' ever since the children were born, but has not had the day-to-day responsibilities that go with that since February 2001."

[¶ 17] The district court's finding that factor (m) favored Michael Eifert is not clearly erroneous.

### D

[¶ 18] Carol Eifert argues that although the district court awarded custody to Michael Eifert, the effect of that award was to grant custody to his extended family, specifically his sister and mother.

[¶ 19] In general, parents have a superior, but not absolute right to the custody and control of their children over the right of any other person. *Goter v. Goter*, 1997 ND 28, ¶ 7, 559 N.W.2d 834; N.D.C.C. § 14–09–06 ("The husband and father and wife and mother have equal rights with regard to the care, custody, education, and control of the children of the marriage...."); N.D.C.C. § 14–09–06.1 ("Between the mother and father, whether natural or adoptive, there is no presumption as to who will better promote the best interests and welfare of the child."); *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("[W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *Hoff v. Berg*, 1999 ND 115, ¶ 8, 595 N.W.2d 285 ("Natural parents have a fundamental liberty interest in the care, custody, and management of their children."). "Absent exceptional circumstances triggering a best-interest analysis, a natural parent is entitled to custody of his or her child." *Goter*, at ¶ 7 (citation omitted).

[¶ 20] The district court awarded custody of the children to Michael Eifert. Carol Eifert provides no authority that analyzes an actual award of custody and the possible impropriety of the effect of that award that places children in a grandparents' home in which the custodial parent also resides, or in a situation that includes close daily interaction with the extended family or others. The cases she cites involve non-parents actually seeking custody—unlike the aunt or either parties' grandparents in this case. *See Interest of D.P.O.*, 2003 ND 127, ¶ 1, 667 N.W.2d 590 (maternal grandparents appealed award of custody to the biological father); *Interest of Lukens*, 1998 ND 224, ¶¶ 4–8, 16, 587 N.W.2d 141 (intervening grandparents sought custody in dispute between the mother and father); *Goter*, 1997 ND 28, ¶¶ 1–2, 559 N.W.2d 834 (intervening paternal aunt and uncle sought custody); *Simons v. Gisvold*, 519 N.W.2d 585, 586 (N.D.1994) (both the natural mother and stepmother sought custody after father's death); *Worden v. Worden*, 434 N.W.2d 341, 343 (N.D.1989) (reversing the award of custody to a child's step-parent in favor of the child's natural mother for a want of exceptional circumstances to justify placing the child with a third party); *Daley v. Gunville*, 348 N.W.2d 441, 441–42 (N.D. 1984) (mother appealed the award of custody to the child's maternal grandmother); *Buchholz v. Buchholz*, 326 N.W.2d 203, 204 (N.D.1982) (aunt and uncle appealed the award of custody to the natural mother).

[¶ 21] Both Michael and Carol Eifert live with their respective parents; therefore, the effect of a custody award to either party would naturally include interaction between the children and their grandparents. In *Schmidt*, we concluded:

> a trial court determining the best interest and welfare of a child in making a custody decision may appropriately consider such things as the child's interaction and interrelationships with a party's extended family and other people, such

as childcare providers and others who may significantly affect the child's best interests.

2003 ND 55, ¶ 13, 660 N.W.2d 196.

[¶ 22] We affirm the district court's award of custody to Michael Eifert.

### III

[¶ 23] Carol Eifert argues the district court erred in its findings on visitation, because visitation granted by the district court was minimal.

[¶ 24] A district court's determinations regarding visitation are findings of fact that are not disturbed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Sisk v. Sisk*, 2006 ND 55, ¶ 8, 711 N.W.2d 203. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, we possess a definite and firm conviction that a mistake has been made. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113.

[¶ 25] In this case, the district court fashioned a visitation schedule that would accommodate Carol Eifert's plans to attend college full-time in California by granting her visitation during typical college breaks—in the summer and every other Christmas. The district court also provided for Carol Eifert's use of email and telephone contact, which her children had become accustomed to during her military service.

[¶ 26] We affirm the district court's award of visitation, which can be increased by mutual agreement of the parties.

### IV

[¶ 27] We affirm the district court's judgment awarding custody to Michael Eifert with reasonable visitation for Carol Eifert.

[¶ 28] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.