2007 ND 41

**Christy Claire JELSING n/k/a Christy Claire Hafner, Plaintiff, Appellee and Cross–Appellant,**

**v.**

**Terry Jay PETERSON, Defendant, Appellant and Cross–Appellee.**

**No. 20060112.**

Supreme Court of North Dakota.

March 22, 2007.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, N.D., for plaintiff, appellee and cross-appellant.

Lynn M. Boughey, Boughey Law Firm, Minot, N.D., for defendant, appellant and cross-appellee.

KAPSNER, Justice.

[¶ 1] Terry Peterson appeals from a judgment granting Christy Jelsing custody of the parties' minor child and allowing Jelsing to move with the child from North Dakota to Arizona. Jelsing cross-appeals from the denial of her request for attorney fees. We affirm, concluding the district court did not clearly err in granting Jelsing custody of the child and in allowing her to move with the child from North Dakota to Arizona, and the court did not err in denying Jelsing's request for attorney fees.

I

[¶ 2] Peterson and Jelsing have never been married to each other. In a March 2003 stipulated judgment, Peterson acknowledged he was the father of a child born to Jelsing in December 2002. The stipulated judgment provided that "[f]or purposes of the child support guidelines

Christy Claire Jelsing is the primary caregiver" of the child and set Peterson's child support obligation at $168 per month. Since that time, the child has spent approximately an equal amount of time with each parent.

[¶ 3] In June 2005, Peterson moved for a determination of custody and sought an interim ex parte order. The district court issued an interim ex parte order, awarding the parties alternating interim custody of the child, requiring neither party to pay child support, prohibiting both parties from driving with the child in a motor vehicle without a valid drivers license, and prohibiting both parties from changing the child's residence to another state without court approval. Jelsing subsequently moved for a determination of custody and to change the child's residence from North Dakota to Arizona.

[¶ 4] After a July 2005 hearing on the interim ex parte order, the court allowed Jelsing to take the child to Arizona with the understanding that she would return the child to North Dakota by September 11, 2005, and while the child was residing in Arizona, Peterson would be entitled to visitation upon reasonable advance notice to Jelsing. The court also said that from the time the child returns to North Dakota until a scheduled evidentiary hearing in October 2005, the child would spend an equal amount of time with each parent.

[¶ 5] After the evidentiary hearing on the parties' custody motions and Jelsing's request to change the child's residence from North Dakota to Arizona, the district court decided the case was an original custody proceeding and awarded Jelsing custody of the child under the "best interests of the child" factors in N.D.C.C. § 14–09–06.2(1). The court then analyzed the relocation issue under *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903, and *Hawkinson v. Hawkinson*, 1999 ND 58, 591 N.W.2d 144

and granted Jelsing's request to move with the child from North Dakota to Arizona. The court also denied Jelsing's request for attorney fees.

## II

[¶ 6] Peterson argues the district court erred in awarding Jelsing custody of the parties' child under the best interest factors in N.D.C.C. § 14–09–06.2(1). Jelsing responds custody was originally with her by virtue of the March 2003 judgment, and she argues there was no necessity for an analysis under the best interests factors, because Peterson was seeking to change custody under N.D.C.C. § 14–09–06.6 and needed to show a material change in circumstances.

[¶ 7] Section 14–09–07, N.D.C.C., provides that a custodial parent "may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree." The purpose of N.D.C.C. § 14–09–07 is to protect the noncustodial parent's visitation rights if the custodial parent seeks to move out of state. *State ex rel. Melling v. Ness*, 1999 ND 73, ¶ 7, 592 N.W.2d 565. In determining whether a custodial parent should be allowed to relocate with a child to another state, the primary consideration is the best interests of the child. *Negaard v. Negaard*, 2002 ND 70, ¶ 7, 642 N.W.2d 916. The custodial parent has the burden of proving, by a preponderance of the evidence, that a move is in the best interests of the child. *Dickson v. Dickson*, 2001 ND 157, ¶ 7, 634 N.W.2d 76.

[¶ 8] The relevant factors for evaluating whether a custodial parent should be allowed to move with a child out of state were enumerated in *Stout*, 1997

ND 61, 560 N.W.2d 903, and *Hawkinson,* 1999 ND 58, 591 N.W.2d 144:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, [and]

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson,* at ¶¶ 6, 9. Under that four-part test, no single factor is controlling and a minor factor in one case may have a greater impact in another case. *Hentz v. Hentz,* 2001 ND 69, ¶ 7, 624 N.W.2d 694.

### A

[¶ 9] Our decisions for relocation recognize that a motion to relocate is not a motion for a change of custody, and in a motion to relocate, a decision about primary physical custody has already been made and is not the issue. *Maynard v. McNett,* 2006 ND 36, ¶ 15, 710 N.W.2d 369; *Oppegard–Gessler v. Gessler,* 2004 ND 141, ¶ 12, 681 N.W.2d 762; *Stout,* 1997 ND 61, ¶ 54, 560 N.W.2d 903.

[¶ 10] Here, the initial March 2003 stipulated judgment said that "[f]or purposes of the child support guidelines Christy Claire Jelsing is the primary care-giver" of the parties' minor child. Contrary to Jelsing's claim, the plain language of the stipulated judgment reflects there was no initial custody determination in this case. The district court thus properly analyzed this case under the best interests factors in N.D.C.C. § 14–09–06.2(1) for an initial custody determination.

[¶ 11] We exercise a limited review of child custody awards. *Eifert v. Eifert,* 2006 ND 240, ¶ 5, 724 N.W.2d 109. A district court's decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. *Klein v. Larson,* 2006 ND 236, ¶ 6, 724 N.W.2d 565. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Gietzen v. Gabel,* 2006 ND 153, ¶ 6, 718 N.W.2d 552. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. *Dvorak v. Dvorak,* 2006 ND 171, ¶ 11, 719 N.W.2d 362. A choice between two permissible views of the weight of the evidence is not clearly erroneous, *Dvorak,* at ¶ 11, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents. *Gonzalez v. Gonzalez,* 2005 ND 131, ¶ 12, 700 N.W.2d 711.

[¶ 12] In awarding Jelsing custody of the parties' child, the district court decided most of the factors for custody decisions under N.D.C.C § 14–09–06.2(1) favored neither party. The court decided Jelsing was the child's closest nurturing parent and had the advantage under

N.D.C.C. § 14–09–06.2(1)(d), the length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity, and (m), any other relevant factors, and Peterson had a "slight advantage" under N.D.C.C § 14–09.2(1)(f), the moral fitness of the parents. The court recognized this was a " 'close call' " with no "clear-cut 'winner,' " but the factor that tipped the scales was that Jelsing was the child's " 'closest, nurturing parent.' "

[¶ 13] Peterson argues the district court improperly found factors (a), the love, affection, and emotional ties between the parents and child, (b), the parents' capacity and disposition to give the child love, affection, and guidance and to continue the child's education, and (c), the parents' disposition to provide the child with food, clothing, and medical care, favored neither party. Peterson claims those factors should have been found to favor him. In support of his claim, Peterson cites some of the court's statements that he was not involved with the child for the first two months of the child's life. The gist of the court's analysis of these three factors, however, is that despite the court's statements about Peterson, the court ultimately had no concerns about him and there was no discernable difference between the parents on those three factors. We decline Peterson's request to reweigh the evidence on those three factors, and we conclude the court did not clearly err in analyzing those factors.

[¶ 14] Peterson argues the district court misapplied the law for factor (d), the stability and continuity of the child's environment, by looking only to the future and ignoring the past and the court clearly erred in finding Jelsing was the child's closest nurturing parent. Although factor (d) uses an approach looking at the past, there is an overlap between factors (d) and

(e), the permanence of the existing or proposed custodial home. *Eifert,* 2006 ND 240, ¶ 11, 724 N.W.2d 109. The court found that for the first two months of the child's life, Jelsing was the child's "closest, nurturing parent," and the child thereafter spent an "approximately" equal amount of time with Peterson and Jelsing. The court's statements do not reflect a misapplication of the law, and contrary to Peterson's claim, the court recognized the child "has enjoyed a stable, satisfactory living environment throughout his young life, whether [the child] has been in [Jelsing's] care or [Peterson's] care." The court found that both parents have provided the child with stability, but that Jelsing was, and remains, the closest nurturing parent of the child. We reject Peterson's claim the court misapplied the law or ignored his evidence, and we conclude the court did not clearly err in analyzing factor (d).

[¶ 15] Peterson claims the court misapplied the law under factor (e) by looking only to the future and ignoring the past and the court clearly erred in concluding this factor favored Jelsing. Contrary to Peterson's claim, however, the court decided this factor favored neither party. Moreover, factor (e) does look to the future, *see Eifert,* 2006 ND 240, ¶ 11, 724 N.W.2d 109, and permits a court to consider the "proposed" custodial home. The court's finding did not ignore the parties' existing homes. We conclude the court did not misapply the law for factor (e), and the court did not clearly err in analyzing that factor.

[¶ 16] Peterson claims the court's finding on factor (f), the parents' moral fitness, is clearly erroneous because the court only gave him a "slight" advantage. He argues the court improperly minimized the evidence of Jelsing's misconduct for convictions for driving while intoxicated and issuing an NSF check, and

for admitting to driving while her license was suspended with the child in the vehicle. Peterson claims the court should have found factor (f) "strongly" favored him. The court decided Jelsing's conduct was not indicative of a character flaw so serious in nature as to disqualify her from being the child's custodial parent. The court recognized a driving under the influence conviction was not a "trivial matter" and Jelsing exercised poor judgment in driving while her license was suspended. The court found the driving under the influence incident was isolated, Jelsing had seen the error of her ways, and that type of conduct was not likely to reoccur. The district court did not minimize Jelsing's conduct, and we do not minimize evidence that may impact a parent's moral fitness. *See Klein*, 2006 ND 236, ¶¶ 15–22, 724 N.W.2d 565. However, the district court accorded Peterson a "slight advantage," and we decline Peterson's invitation to reweigh factor (e) in the balance of the other relevant factors.

[¶ 17] Peterson claims the court's finding on factor (k), the child's interrelationship and interaction with others, is clearly erroneous because the finding ignored the child's extended family in the Minot area. Peterson also asserts the court misapplied the law on factor (m), any other relevant factor, by using his lawful and appropriate comments against him, including his comments about requesting a paternity test and suggesting the possibility of other options, such as adoption. We conclude, however, the district court did not misapply the law with those comments or any other factors raised by Peterson. The factor that tipped the scales in this case is the court's finding that Jelsing "is, and has always been, the 'closest, nurturing parent'" for the child. We agree with the district court's statement that this case was a "'close call'" with "no clear-cut 'winner.'" In situations like this, we recognize

the admonishment of N.D.R.Civ.P. 52(a) that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." We are not left with a definite and firm conviction the district court made a mistake in evaluating the best interests of the child factors under N.D.C.C. § 14–09–06.2(1) and in awarding primary custody of the child to Jelsing. We therefore conclude the court's custody decision is not clearly erroneous.

**B**

[¶ 18] Peterson argues the district court erred in allowing Jelsing to move with the child to Arizona, because the court misapplied the law by ignoring the requirement to preserve and foster his relationship with his child under the fourth *Stout–Hawkinson* factor, which requires the court to consider:

> The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144.

[¶ 19] In analyzing the fourth *Stout–Hawkinson* factor, the district court found:

> [Jelsing] is confident that a visitation schedule can be devised which will enable [Peterson] and [the child] to develop and maintain a parent-child relationship which will be beneficial to both of them—even though this relationship will necessarily have to be sustained at a great distance if [Jelsing] is allowed to take [the child] with her to Arizona and [Peterson] remains in North Dakota.

[Jelsing] believes that things will work out, from a visitation standpoint, because:

(a) she has never attempted to keep [the child] from [Peterson] in the past, and will not do so in the future;

(b) she wants [the child] to be able see [Peterson] as often as possible;

(c) she will encourage [Peterson and his family] to visit [the child] in Arizona as often as they like;

(d) [Jelsing] will do her best to see that [the child] gets back to North Dakota as often as possible;

(e) [Peterson] can exercise visitation with [the child] for the majority of the summer each year, and on alternating major holidays throughout the year; and,

(f) [Jelsing] will facilitate regular telephone and e-mail communication between [Peterson and the child].

In summary, the Court agrees with [Jelsing's] assessment that the advantages of allowing her to change [the child's] residency from North Dakota to Arizona are many, and that the disadvantages can be ameliorated with the implementation of a visitation schedule which will enable [Peterson and the child] to maintain a meaningful parent-child relationship.

[¶ 20] Peterson argues the court's statement that the disadvantages of the move can be "ameliorated" with a visitation schedule demonstrates a misapplication of the law to preserve and foster his relationship with his child. We conclude, however, the district court's decision on this factor does not ignore the requirement of preserving and fostering Peterson's relationship with his child. The context of the court's decision recognizes that any of the obvious "distance" disadvantages of a move to Arizona could be alleviated with an appropriate visitation sched-ule. The court implemented a visitation schedule that, in the court's opinion, "ameliorated" the disadvantages of the distance of the move. Our decisions have explicitly recognized that distance alone is not a sufficient basis to deny relocation and must be considered in the context of fashioning a visitation schedule to foster a relationship between the child and the noncustodial parent. *Porter v. Porter,* 2006 ND 123, ¶ 17, 714 N.W.2d 865. We have also said that although it may be impossible to establish a visitation schedule with exactly the same amount or frequency of visitation, a visitation schedule that provides less frequent, but extended, visitation periods will preserve a noncustodial parent's ability to foster and develop a relationship with a child. *Id.* We conclude the court did not misapply the law, and we are not left with a definite and firm conviction the court erred in allowing Jelsing to move with the parties' child from North Dakota to Arizona. We therefore conclude the court's relocation decision is not clearly erroneous.

III

[¶ 21] In her cross-appeal, Jelsing argues the district court should have awarded her attorney fees under N.D.C.C. § 14–05–23 and *Bertsch v. Bertsch,* 2006 ND 31, ¶ 8, 710 N.W.2d 113.

[¶ 22] Section 14–05–23, N.D.C.C., and *Bertsch,* 2006 ND 31, ¶ 8, 710 N.W.2d 113 involve awards of attorney fees in a divorce proceeding. In a divorce action, a court may award attorney fees under N.D.C.C. § 14–05–23, based upon one spouse's need and the other's ability to pay, and an attorney fee award will not be overturned on appeal unless the court abused its discretion. *Lukenbill v. Fettig,* 2001 ND 47, ¶ 14, 623 N.W.2d 7. Jelsing's reliance on N.D.C.C. § 14–05–23 and

*Bertsch* is misplaced, however, because this is not a divorce proceeding.

[¶ 23]  Attorney fees are not allowed to a successful litigant unless expressly authorized by statute or agreement.  *L.C.V. v. D.E.G.*, 2005 ND 180, ¶ 14, 705 N.W.2d 257.  Jelsing has not cited any legal authority entitling her to attorney fees in this case.  *See L.C.V.*, at ¶¶ 12–14 (holding mother not entitled to attorney fees in paternity action under statutes in effect when action commenced); *Lukenbill*, 2001 ND 47, ¶¶ 14–15, 623 N.W.2d 7 (same).  We conclude as a matter of law the district court did not err in declining to award Jelsing attorney fees for this proceeding.

## IV

[¶ 24]  We affirm the judgment.[1]

[¶ 25] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

DALE V. SANDSTROM, J., I concur in the result.

1.  The district court's memorandum decision, with its extensive findings of fact, and the court's judgment are identical except for the title and "closing matters" about child support in the judgment.  This unnecessary repetition is apparently based on a misconception by Peterson's counsel, which is explained in a letter to the district court:

> As to the proposed judgment I submitted, I did so because in the dozen or so cases I have had before the supreme court in the last year or so, I have found the Court bothered by judges who do not place their reasoning in the final document (or worse yet, just put it in a letter, or even worse yet, give no reasoning at all) or make it necessary for the appellate court to go from document-to-document to find the court's reasoning.  In other words, the supreme court has clearly indicated (at least to me) that the findings should be in the final document and not incorporated by reference.

Contrary to counsel's representations to the district court, however, we do not require a district court's findings of fact to be repeated in the judgment.  Under N.D.R.Civ.P. 52(a), it is "sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court."  We have also said a district court's findings must be sufficient to enable an appellate court to understand the factual determinations made by the court as a basis for its conclusions of law and judgment.  *Gonzalez*, 2005 ND 131, ¶ 4, 700 N.W.2d 711.