2010 ND 24

**Melissa FLECK, n/k/a Melissa Regan, Plaintiff and Appellant**

v.

**Troy A. FLECK, Defendant and Appellee.**

**No. 20090075.**

Supreme Court of North Dakota.

Feb. 17, 2010.

Theresa Luan Cole, Bismarck, N.D., for plaintiff and appellant.

Daniel Harry Oster, Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Melissa Fleck, now known as Melissa Regan, appeals from an order denying her motion to amend a divorce judgment to grant her primary residential responsibility[1] for her two children and permission to move with the children to Arizona, and granting Troy A. Fleck's motion for primary residential responsibility for the children and ordering Regan to pay child support. We conclude the district court's decision to grant Fleck primary residential responsibility for the children is not clearly erroneous, but its calculation of Regan's child support obligation is erroneous as a matter of law. We affirm in part, reverse in part, and remand for recalculation of Regan's child support obligation.

I

[¶ 2] Fleck and Regan were divorced in August 2006 and their stipulated settlement agreement was incorporated into the divorce judgment. Fleck and Regan had two children during the marriage, born in 1999 and 2000, and they agreed to share

---

1. The terms "custody" and "visitation" are now referred to as "primary residential responsibility" and "parenting time," respectively. See N.D.C.C. § 14–09–00.1(5) and (6); *Machart v. Machart*, 2009 ND 208, ¶ 1 n. 1, 776 N.W.2d 795. Although the district court decided this case under the prior law, we use the current terminology in this opinion except when quoting precedent and documents in the record.

"equal physical custody" and "joint legal custody" of the children. One year before the parties were divorced, Regan moved to Sioux Falls, South Dakota, to take classes for 11 months in the Mount Marty College nurse anesthesia program. While attending college in Sioux Falls, Regan returned to Bismarck almost every other weekend to see the children. After completion of the 11–month program, Regan began doing her clinicals in Bismarck and attempted to spend as much time as possible with the children. Regan graduated in February 2008. During the time Regan was pursuing her studies, Fleck, a college graduate who is employed as a Burleigh County Deputy Sheriff, had the responsibility for taking care of the children and the family home.

[¶ 3] In March 2008, Regan married Shawn Regan, who she had met while attending college in Sioux Falls. In April 2008, the couple moved to Arizona where they had both been offered employment. Both work as nurse anesthetists at the same hospital near Phoenix, Arizona. Regan has a part-time "1099 position," in which she is "paid hourly straight" and pays her own taxes, while Shawn Regan has a full-time "W–2 position," in which he receives benefits. Regan is paid $86 per hour and her husband is paid $68 per hour plus benefits. The couple purchased a home in a gated community in the area. Since moving to Arizona, Regan has traveled to Bismarck every other two weeks to live with the children in a rented apartment and the children have traveled to Arizona periodically to spend time with Regan.

[¶ 4] In August 2008, Regan filed a motion to change primary residential responsibility for the children from "shared physical custody" with Fleck to "sole physical custody" with Regan. She also sought to establish a parenting time schedule and child support obligation for Fleck, and to receive permission to relocate the children to Arizona. Fleck responded with a counter-motion to amend the divorce judgment to grant him "primary physical custody" of the children and to establish a parenting time schedule and child support obligation for Regan. Following an evidentiary hearing, the district court denied Regan's motion and granted Fleck's counter-motion awarding him primary residential responsibility for the children, awarding Regan "ample" parenting time, and ordering that Regan pay $2,246 per month for child support.

II

■ [¶ 5] Regan argues the district court's decision denying her request for primary residential responsibility and for permission to relocate the children to Arizona is clearly erroneous.

[¶ 6] In *Maynard v. McNett*, 2006 ND 36, ¶ 21, 710 N.W.2d 369, a majority of this Court explained:

> We hold that a parent with joint legal and physical custody may not be granted permission to move with the parties' child, unless the district court first determines the best interests of the child require a change in primary custody to that parent. A parent with joint custody who wishes to relocate with the child must make two motions: one for a change of custody, governed by N.D.C.C. § 14–09–06.2, and one to relocate with the child, governed by N.D.C.C. § 14–09–07. The change-of-custody motion requires the party wishing to relocate to show there has been a significant change in circumstances and the best interests of the child would be served by the child's moving with the relocating parent.

The district court found that "[c]learly with [Regan's] move to Arizona and her

new part-time job at the same hospital at which her husband works full time, there has been a significant change in circumstances," and the parties do not challenge this finding. *See, e.g., Dietz v. Dietz,* 2007 ND 84, ¶ 13, 733 N.W.2d 225 (in-state move with children may be material change of circumstances); *Gietzen v. Gietzen,* 1998 ND 70, ¶ 10, 575 N.W.2d 924 (in-state move with child may be viewed as significant change of circumstances); *Hanson v. Hanson,* 1997 ND 151, ¶ 5, 567 N.W.2d 216 (out-of-state move could be substantial change of circumstances); *Van Dyke v. Van Dyke,* 538 N.W.2d 197, 201 (N.D.1995) (out-of-state move alone might support finding of significant change in circumstances); *Gould v. Miller,* 488 N.W.2d 42, 44 (N.D.1992) (move to another state is made significant by N.D.C.C. § 14–09–07). Consequently, the district court properly analyzed this case under the best interests factors contained in N.D.C.C. § 14–09–06.2(1). *See Jelsing v. Peterson,* 2007 ND 41, ¶ 10, 729 N.W.2d 157.

[¶ 7] In *Jelsing,* 2007 ND 41, ¶ 11, 729 N.W.2d 157, we said:

We exercise a limited review of child custody awards. *Eifert v. Eifert,* 2006 ND 240, ¶ 5, 724 N.W.2d 109. A district court's decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. *Klein v. Larson,* 2006 ND 236, ¶ 6, 724 N.W.2d 565. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Gietzen v. Gabel,* 2006 ND 153, ¶ 6, 718 N.W.2d

552. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. *Dvorak v. Dvorak,* 2006 ND 171, ¶ 11, 719 N.W.2d 362. A choice between two permissible views of the weight of the evidence is not clearly erroneous, *Dvorak,* at ¶ 11, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents. *Gonzalez v. Gonzalez,* 2005 ND 131, ¶ 12, 700 N.W.2d 711.

[¶ 8] In awarding primary residential responsibility for the children to Fleck, the district court found the following best interests factors in N.D.C.C. § 14–09–06.2(1) [2] favored Fleck: (d) the length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity; (e) the permanence, as a family unit, of the existing or proposed custodial home; (h) the home, school, and community records of the child; and (m) any other relevant factors. The court found the remaining factors were either inapplicable or favored neither party. Regan does not challenge the court's findings that factor (g), the mental and physical health of the parents, favored neither party and that factors (i), the reasonable preference of the child, (j) evidence of domestic violence, and (*l*), the making of false allegations, are inapplicable under the circumstances. Regan challenges the court's findings on the remaining nine best interests factors.

[¶ 9] The district court found factor (a) in N.D.C.C. § 14–09–06.2(1), the love, af-

---

**2.** The district court's decision was issued before the effective date of the 2009 amendments to N.D.C.C. § 14–09–06.2(1). *See* 2009 N.D. Sess. Laws ch. 149, § 5.

fection, and other emotional ties existing between the parents and child, favored neither party because "[b]oth parties love their children and have strong emotional ties to them." The court found factor (b), the capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child, favored neither party because "[b]oth parties have the capacity and are disposed to provide love, affection, guidance and education to their children." The court found factor (c), the disposition of the parents to provide the child with food, clothing, medical care, or other remedial care, favored neither party because "[b]oth parties are disposed to provide their children with food, clothing and medical care." The court found factor (f), the moral fitness of the parents, favored neither party because both Regan and Fleck are "morally fit as in regard to the custody of their children." The court found factor (k), the interaction and interrelationship of the child with any person who resides in or frequents the household of a parent, favored neither party because "[t]here is no evidence that if the children were in the custody of either parent that they would have any contact with any person who might adversely [a]ffect the children's best interests." Regan's challenge to these findings consists of emphasizing the evidence she presented to the court in support of her motion and ignoring the evidence Fleck presented in support of his motion. There is abundant evidence to support these findings, and we conclude the court's findings that these best interests factors favored neither party are not clearly erroneous.

[¶ 10] The district court found factors (d), (e), (h), and (m) in N.D.C.C. § 14–09–06.2(1) favored Fleck. Regan's challenge to these findings again focuses on the evidence she presented to the court while disregarding the evidence Fleck presented to the court. The court found:

d. *The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.* Bismarck has always been the home city of the children. They attend school in Bismarck and they are involved in sports and other activities in Bismarck. While [Regan] provided that stable environment for the children while [Fleck] was deployed to Iraq, [Fleck] has provided that stable environment for the children since [Regan] went to Sioux Falls to further her education and achieve a goal of becoming a Nurse Anesthetist. The Court finds the children are in a stable and satisfactory environment living with [Fleck] in Bismarck. This factor favors [Fleck].

e. *The permanence, as a family unit, of the existing or proposed custodial home.* The evidence is that the children have lots of relatives and extended family on both sides living in Bismarck. [Regan's] mother and sister live in San Diego, while [Shawn Regan's] parents are considering a move to Arizona. The Court finds [Fleck's] home will provide the children with more of a permanent family unit in the larger sense of their extended family in Bismarck and the Bismarck area. This factor favors [Fleck].

. . . .

h. *The home, school, and community record of the child.* [J] is in the 3rd grade and [D] is in the 2nd grade. [J] is receiving extra help with reading and she is being helped under an IEP (Individual Education Plan) developed by her school. [Fleck] deals with this as he is dealing with a recent reading problem for [D]. [Regan] does not fully accept that [J] has need of help. Both children

are doing reasonably well in school with the help they are receiving. Even though [Fleck] moved to a home in the north part of Bismarck, he still takes the children to Solheim school on the south side of Bismarck so as to maintain the continuity of the education. This factor favors [Fleck].

. . . .

m. *Any other factors considered by the court to be relevant to a particular child custody dispute.* The Court finds that in terms of extended family, continuity, and stability the children are doing very well in [Fleck's] home in Bismarck. This factor favors [Fleck].

■ [¶ 11] We are especially deferential in reviewing a district court's difficult decision on primary residential responsibility when it involves two fit parents. *See, e.g., Jelsing,* 2007 ND 41, ¶ 11, 729 N.W.2d 157. We conclude the district court's findings on the best interests factors and its ultimate finding that the best interests of the children would be served by awarding primary residential responsibility to Fleck are not clearly erroneous.

### III

■ [¶ 12] Regan argues the district court erred in establishing her child support obligation.

■ [¶ 13] " 'Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.' " *Verhey v. McKenzie,* 2009 ND 35, ¶ 5, 763 N.W.2d 113 (quoting *Buchholz v. Buchholz,* 1999 ND 36, ¶ 11, 590 N.W.2d 215). "A court errs as a matter of law if it does not comply with the requirements of the child support guidelines." *Doepke v. Doepke,* 2009 ND 10, ¶ 6, 760 N.W.2d 131. The child support guidelines, found in N.D. Admin. Code ch. 75–02–04.1, were recently described in *Heinle v. Heinle,* 2010 ND 5, ¶¶ 37–38:

The child support guidelines provide scheduled amounts of support based upon an obligor's net income. *See* N.D. Admin. Code § 75–02–04.1–10. The scheduled amounts are presumptively correct, and a district court may only deviate from this amount if a preponderance of the evidence establishes that a deviation from the guidelines is in the best interests of the supported child. *State of Michigan, ex rel. Schneider v. Schneider,* 2008 ND 35, ¶ 4, 745 N.W.2d 368 (citing N.D. Admin. Code § 75–02–04.1–09(2)). "This Court has emphasized any deviation from the guidelines requires the court to make a written finding or a specific finding on the record." *Schneider,* at ¶ 4 (citing *Schumacher v. Schumacher,* 1999 ND 10, ¶ 10, 589 N.W.2d 185).

The child support guidelines define "net income" as an obligor's gross annual income less federal and state tax obligations and other expenses. N.D. Admin. Code § 75–02–04.1–01(7). In calculating child support, a district court must consider "[n]et income received by an obligor from all sources. . . ." *N.D. Admin. Code* § 75–02–04.1–02(3). Where an obligor's income is subject to fluctuation, "information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." N.D. Admin. Code § 75–02–04.1–02(7). If an obligor's income has changed in the recent past, or is likely to change in the near future, "consideration may be given to the new or likely future circumstances." N.D. Admin. Code § 75–02–04.1–02(8). However, "unless the

trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8)." *Korynta [v. Korynta],* 2006 ND 17, ¶ 17, 708 N.W.2d 895. Therefore, unless the district court makes a specific finding that the income reflected on the prior year's tax return is not a reliable indicator of future income, "[i]t is improper to calculate an obligor's annual employment income based on a mid-year pay stub...." *Berge v. Berge,* 2006 ND 46, ¶ 19, 710 N.W.2d 417.

[¶ 14] Fleck proposed that Regan pay $2,159 per month in child support based on Shawn Regan's full-time hourly pay rate of $68 times 40 hours per week for 52 weeks per year, with a $2,400 yearly adjustment for the children's parenting time travel expenses under N.D. Admin. Code § 75–02–04.1–09(2)(i). Regan proposed a child support obligation of $1,343 per month based on her self-employment income as a "1099 independent contractor" of $86 per hour for 24 hours per week, with deductions for continuing education requirements and parenting time travel expenses. In arriving at a child support obligation of $2,246 per month, the district court reasoned "[n]ow that custody has been resolved, [Regan] should be able to work more hours," and found that "[w]ith two 12 hour shifts per week she is under-employed." The court explained: "If she worked full time at $68 per hour, like her husband, for a 40 hour week she would earn a weekly gross income of $2,720. Since she is underemployed, the Court finds [Regan] can earn a gross income at $68 per hour full time and 40 hours per week, 52 weeks per year of $141,440." The court then subtracted allowable deductions and permitted an adjustment un-der N.D. Admin. Code § 75–02–04.1–09(2)(i) for parenting time travel expenses in arriving at Regan's child support obligation.

[¶ 15] The district court's child support calculation does not comport with the child support guidelines and is erroneous as a matter of law. There was no evidence presented by the parties to support the court's finding that Regan was underemployed as that term is defined in N.D. Admin. Code § 75–02–04.1–07(1)(b) (significantly less than statewide average for occupation) and (2) (calculations for presumption of underemployment). *See also Halberg v. Halberg,* 2010 ND 20, ¶ 16. Even if there was evidence that Regan was underemployed, N.D. Admin. Code § 75–02–04.1–07(3) provides the method for imputing income to an underemployed obligor:

[G]ross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.

a. A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage.

b. An amount equal to six-tenths of the statewide average earnings for persons with similar work history and occupational qualifications.

c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months beginning on or after twenty-four months before commencement of the proceeding before the court, for which reliable evidence is provided.

In determining imputed income here, the district court extrapolated Regan's husband's hourly income from an employment position that differed from her employ-

ment position. Not only is it error when a district court "extrapolates from less than a twelve-month period" of an obligor's employment to determine the obligor's imputed income, "unless the [district] court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of [the obligor's] future circumstances, the [district] court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8)." *Korynta,* 2006 ND 17, ¶ 17, 708 N.W.2d 895. Moreover, there is no support in the guidelines for the court to extrapolate an obligor's income based on the obligor's spouse's hourly income on the unsupported assumption that the obligor could find employment in a position identical to the spouse's position.

[¶ 16] We recognize a determination of Regan's income from self-employment under N.D. Admin. Code § 75–02–04.1–05 was difficult because of Regan's short history of employment as a nurse anesthetist and her lack of any employment history while she pursued her college degree. *See Doepke,* 2009 ND 10, ¶ 7, 760 N.W.2d 131 ("Under the child support guidelines, a self-employed individual's child support obligation is generally calculated using an average of the individual's self-employment income from the most recent five years.") We also acknowledge the scant evidence in the record presented by the parties to assist the court in correctly determining Regan's child support obligation. "Nevertheless, a court errs as a matter of law if it fails to comply with the child support guidelines in determining an obligor's child support obligation." *Brandner v. Brandner,* 2005 ND 111, ¶ 18, 698 N.W.2d 259. We reverse the court's child support award and remand for recalculation of Regan's child support obligation in accordance with the child support guidelines.

IV

[¶ 17] We affirm the district court's award of primary residential responsibility to Fleck, reverse the court's child support award, and remand for recalculation of Regan's child support obligation.

[¶ 18] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.