2009 ND 136

**Christopher A. LINDBERG, Plaintiff and Appellant**

v.

**Sherri L. LINDBERG, Defendant and Appellee.**

**No. 20080174.**

Supreme Court of North Dakota.

July 21, 2009.

Christopher A. Lindberg, Fargo, ND, pro se.

Stephen R. Dawson, Dawson Law Office, Fargo, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1]   Chris Lindberg appeals from a divorce judgment awarding Sherri Lindberg physical custody of the parties' children and awarding Sherri Lindberg spousal support.  We affirm the district court's child custody award; however, we reverse and remand for further proceedings because we conclude the district court failed to adequately explain its award of spousal support.

I

[¶ 2]   Chris Lindberg and Sherri Lindberg were married in 1994 and have three children from their marriage.  The parties separated in 2004, when Sherri Lindberg and the children moved out of the marital home and in with Sherri Lindberg's parents.  In 2005, Chris Lindberg moved the court for a legal separation and Sherri Lindberg countersued for divorce.

[¶ 3]   Following the divorce trial, the district court addressed custody of the children and found best interest factors (a), (b), (c), (f), (g), (h), (i) and (j) favored neither party and factors (d), (e), (k) and (m) favored Sherri Lindberg.  The district court awarded physical custody of the chil-dren to Sherri Lindberg and granted Chris Lindberg liberal visitation.  The court ordered Chris Lindberg to pay Sherri Lindberg $750 a month in rehabilitative spousal support for four years.

II

[¶ 4]   Chris Lindberg argues the district court erred in awarding sole physical custody of the parties' minor children to Sherri Lindberg.  "A district court's award of custody is treated as a finding of fact and, on appeal, will not be reversed unless it is clearly erroneous under N.D.R.Civ.P. 52(a)."  *Wessman v. Wessman*, 2008 ND 62, ¶ 12, 747 N.W.2d 85.  "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made."  *Burns v. Burns*, 2007 ND 134, ¶ 9, 737 N.W.2d 243 (quoting *Gietzen v. Gabel*, 2006 ND 153, ¶ 6, 718 N.W.2d 552).  "Under the clearly errone-ous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a dis-trict court's initial custody decision merely because we might have reached a different result."  *Jelsing v. Peterson*, 2007 ND 41, ¶ 11, 729 N.W.2d 157.  This is particularly relevant "for a difficult child custody deci-sion involving two fit parents."  *Id.*

[¶ 5]   In an initial custody deter-mination, N.D.C.C. § 14–09–06.1 requires "the trial court [to] award custody of the child[ren] to the person who will better promote the best interests and welfare of the child[ren]."  *Klein v. Larson*, 2006 ND 236, ¶ 7, 724 N.W.2d 565.  In determining the best interests of the children, the "court must consider all [relevant] factors specified in N.D.C.C. § 14–09–06.2(1)."

*Schmidt v. Schmidt*, 2003 ND 55, ¶ 6, 660 N.W.2d 196.

[¶ 6] Here, the district court considered the relevant best interest factors in making its custody determination. Specifically, the district court found factors (a), (b), (c), (f), (g), (h), (i) and (j) favored neither party and factors (d), (e), (k) and (m) favored Sherri Lindberg.

### A

[¶ 7] Chris Lindberg argues the court erred in finding factor (a) favored neither party. Under factor (a), the court must look at "[t]he love, affection, and other emotional ties existing between the parents and child[ren]." N.D.C.C. § 14–09–06.2(1)(a). Chris Lindberg claims factor (a) should have been found in his favor because he continually hugs the children and tells them how much he loves them and how proud they make him. In determining factor (a) favored neither party, the court found that "[b]oth Christopher and Sherri love and show affection to their children." The evidence demonstrates each party loves and shows affection to the children. The district court's finding that factor (a) favored neither party is not clearly erroneous.

### B

[¶ 8] Chris Lindberg argues the court erred in finding factor (b) favored neither party. When analyzing factor (b), the court must consider "[t]he capacity and disposition of the parents to give the child[ren] love, affection, and guidance and to continue the education of the child[ren]." N.D.C.C. § 14–09–06.2(1)(b). Chris Lindberg contends factor (b) should have favored him because of his strong commitment to being a good parent and because of his educational background. The district court found factor (b) favored neither party because "[b]oth parents have

the capacity and disposition to give the children love, affection, and guidance and to continue the education of the children." The evidence supports the district court's finding because each party testified about the love they have for their children and the importance of the children's education. The court's finding factor (b) favored neither party is supported by the evidence and, therefore, is not clearly erroneous.

### C

[¶ 9] Chris Lindberg argues the court erred in finding factor (c) favored neither party. Under factor (c), the court must look at "[t]he disposition of the parents to provide the child[ren] with food, clothing, medical care ... and other material needs." N.D.C.C. § 14–09–06.2(1)(c). Chris Lindberg claims this factor should have favored him because he can better provide for the children since he is earning a master's degree and working two jobs. Chris Lindberg also contends factor (c) should have favored him because Sherri Lindberg is underemployed and unambitious since she is content earning $240 a month and living with her parents. In analyzing factor (c), the district court found both parents were clearly capable and disposed to feed, clothe and care for the children's medical needs. We decline to hold the parent whose earnings are greater is more disposed to provide the children with food, clothing, medical care and other material needs. The evidence demonstrates that when each party is responsible for caring for the children, each of them provides the children with food, clothing and the appropriate care. The district court's finding that factor (c) favored neither party is not clearly erroneous.

### D

[¶ 10] Chris Lindberg argues the court erred in finding factor (d) favored

Sherri Lindberg. A proper analysis of factor (d) requires the court to consider "[t]he length of time the child[ren] [have] lived in a stable satisfactory environment and the desirability of maintaining continuity." N.D.C.C. § 14–09–06.2(1)(d). We have also said that allowing the children to live in the same house is a valid consideration under factor (d). *Shaw v. Shaw*, 2002 ND 114, ¶ 7, 646 N.W.2d 693. In determining factor (d) favored Sherri Lindberg, the district court focused on the family's numerous moves and on Chris Lindberg's military deployments. The court found that "[u]p to their separation in 2004, the parties had lived together as a family for approximately five (5) of the ten (10) years of marriage." The court found that since Chris Lindberg's return from his deployment to Iraq in July 2007, he has lived in the family home and that since the parties separated in September 2004, Sherri Lindberg and the children have lived with her parents. The court determined factor (d) favored Sherri Lindberg because "[t]he children have lived in a stable satisfactory environment consistently with Sherri and it is desirable that that continuity be maintained."

[¶ 11] Chris Lindberg argues the court erred in finding factor (d) favored Sherri Lindberg because the children have lived in the marital home longer than they have lived with Sherri Lindberg's parents. We have previously held that in analyzing factor (d) the court must do more than total the number of days the children have lived with each party. *Klein*, 2006 ND 236, ¶ 13, 724 N.W.2d 565.

[¶ 12] Chris Lindberg also contends the court erred in its analysis of factor (d) because it penalized him for being absent due to military deployment. Factor (d) is backward looking. Therefore, the amount of time Chris Lindberg has spent away from the children for any reason, including that time due to his military obligations, is a relevant consideration under factor (d). *See Eifert v. Eifert*, 2006 ND 240, ¶¶ 8, 9, 724 N.W.2d 109. Since the parties' first child was born in 1998, Chris Lindberg has been deployed over two and a half years. The evidence establishes that during all of the parties' military separations and for the past four years, the children and Sherri Lindberg have lived with Sherri Lindberg's parents in their home. While we commend Chris Lindberg's service to our country, the reality is his absence has limited the amount of time he has been able to provide the children with stability. The district court's finding that factor (d) favored Sherri Lindberg was not clearly erroneous because the evidence demonstrates Sherri Lindberg has provided a more stable living environment for the children.

### E

[¶ 13] Chris Lindberg argues the court erred in finding factor (e) favored Sherri Lindberg. When analyzing factor (e), the court must examine "[t]he permanence, as a family unit, of the existing or proposed custodial home." N.D.C.C. § 14–09–06.2(1)(e). "Although overlap exists between factors (d) and (e), factor (e) uses a forward-looking approach to the stability of the family unit, its interrelations and environment, versus the backward-looking factor (d)." *Eifert*, 2006 ND 240, ¶ 11, 724 N.W.2d 109. Factor (e) focuses on the children's future prospects for a stable family environment. *Id.* Interaction and interrelationships with parents and relatives are also considered under factor (e). *Id.*

[¶ 14] Chris Lindberg claims he should have received the advantage under factor (e) because he is living in the parties' marital home. Chris Lindberg argues the court erred in finding factor (e) favored

Sherri Lindberg because Sherri Lindberg's living situation is uncertain since she testified she was going to move out of her parents' home but did not know where she was going to move to. In analyzing factor (e), the district court found:

> "Although Christopher is considering terminating his employment with the Army so that he won't be deployed again, he has not yet done so. Although Christopher has a girlfriend, he has not introduced her to the children.

> "Sherri's present home consists of her mother, father, herself, and the children. Sherri continues to be the primary parent for the children."

The record reflects the children have lived with Sherri Lindberg and her parents since the parties separated in 2004. The evidence also establishes Chris Lindberg is still a member of the National Guard and could be deployed in the future. The district court's finding that factor (e) favored Sherri Lindberg is not clearly erroneous because it is supported by the evidence.

### F

[¶ 15] Chris Lindberg argues the court erred in finding factor (f) favored neither party. Factor (f) addresses "[t]he moral fitness of the parents." N.D.C.C. § 14–09–06.2(1)(f). In looking at factor (f), the court must examine "whether [a party's] moral conduct might be detrimental to the best interests of the child[ren]." *Klein*, 2006 ND 236, ¶ 16, 724 N.W.2d 565.

[¶ 16] Chris Lindberg claims he should have been given an advantage under factor (f) because Sherri Lindberg has a history of swearing in front of the children and of being verbally and physically abusive toward him. Chris Lindberg contends factor (f) should have favored him because he is religious and has strong moral values. The district court's finding that "[b]oth parents are morally fit" is not clearly erro-

neous because no evidence exists suggesting either parent is immoral.

### G

[¶ 17] Chris Lindberg argues the court erred in finding factor (g) favored neither party. Under factor (g) the court must look at "[t]he mental and physical health of the parents." N.D.C.C. § 14–09–06.2(1)(g). Chris Lindberg contends factor (g) should have favored him because he his mentally and physically healthy and because he argues Sherri Lindberg has been diagnosed with bulimia, generalized anxiety, social phobia, major depressive disorder-recurrent, and dysthymia. We have previously stated the relevant inquiry under factor (g) "is not merely whether a parent has mental or physical health problems, but whether those health problems might adversely affect the parent's ability to care for the child[ren]." *McDowell v. McDowell*, 2001 ND 176, ¶ 24, 635 N.W.2d 139. An actual adverse effect is not required before health is considered in the custody determination, but "more than conjecture and speculation is required." *Id.*

[¶ 18] In determining factor (g) favored neither party, the district court stated that "Sherri has been diagnosed as borderline asymatic [sic] for which she uses an inhaler, and with mild depression with some anxiety for which she takes medication (Zoloft). Sherri's ability to parent the children has not been adversely affected." The district court's finding that Sherri Lindberg's depression and anxiety do not affect her ability to parent the children is based upon the court's assessment of the credibility of the parties. We have consistently stated that on appeal, we give great deference to the trial court's opportunity to observe and assess the credibility of the parties. *Hanisch v. Osvold*, 2008 ND 214, ¶ 11, 758 N.W.2d 421. Therefore, we con-

clude the district court's finding that factor (g) favored neither party is not clearly erroneous.

## H

[¶ 19] Chris Lindberg argues the court erred in finding factor (h) favored neither party. Factor (h) requires the court to consider "[t]he home, school, and community record of the child[ren]." N.D.C.C. § 14–09–06.2(1)(h). Chris Lindberg contends this factor should have been found in his favor because the children's grades have improved since he returned from Iraq. The district court determined factor (h) favored neither party because "[t]he children are doing well at school and in their activities in the community." The court's finding that factor (h) favored neither party is not clearly erroneous because no evidence supports Chris Lindberg's allegation that the children were struggling in school prior to his return from Iraq.

## I

[¶ 20] Chris Lindberg argues the court erred when it disregarded his testimony about the children's preference to spend an equal amount of time with each parent. Under factor (i) the court can look at "[t]he reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference." N.D.C.C. § 14–09–06.2(1)(i). The district court found factor (i) was not applicable because "[t]he children are too young to express a reasonable preference." Factor (i) does not contemplate having the parties or other witnesses testify about the children's preference. Factor (i) only allows the court to consider the children's preference if the court determines the children are able to express a preference. At the time of trial, the parties' children were ten years old, nine years old and three years old. The district court properly disregarded the parties' testimony about the children's preference because the children were too young to express a reasonable preference.

## J

[¶ 21] Chris Lindberg argues the court clearly erred in finding his allegations of abuse did not rise "to the level of a rebuttable presumption relating to child custody" under factor (j). Factor (j) requires the court to "consider evidence of domestic violence." N.D.C.C. § 14–09–06.2(1)(j). Under factor (j), the district court found that "[e]ach party denies committing domestic violence on the other. There is no clear, credible evidence that domestic violence has occurred, or that it rises to the level of a rebuttable presumption relating to the custody of the children." At trial, each party alleged the other party committed domestic violence. Since neither party presented any evidence demonstrating domestic violence had occurred, the district court's finding that domestic violence either did not occur or if it did occur it did not rise to the level of a rebuttable presumption relating to the custody of the children is not clearly erroneous.

## K

[¶ 22] Chris Lindberg argues the court erred in finding factor (k) favored Sherri Lindberg. Factor (k) requires the court to consider "[t]he interaction and interrelationship, or the potential for interaction and interrelationship, of the child[ren] with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child[ren]'s best interests." N.D.C.C. § 14–09–06.2(1)(k). Under factor (k) the court found:

"Christopher has a girlfriend but has not yet introduced her to the children.

Christopher's father and stepmother live in Arkansas in the winter and Saginaw, MN in the summer. Christopher's brother, Timothy, also lives in Saginaw. Christopher is estranged from his mother.

"Sherri continues to reside with her parents. She also has extended family including her sister, and an aunt and uncle living in Fargo. The children get along well with Sherri's parents, who help with the children and pick them up from school or daycare."

Although the district court did not explicitly state it found factor (k) favored Sherri Lindberg, it can be inferred from the plain language of the court's finding. Chris Lindberg claims this factor should have either favored him or favored neither party. The record reflects the children enjoy spending time with Chris Lindberg's father and stepmother and with Sherri Lindberg's parents. However, the children spend most of their time with Sherri Lindberg's parents because they live with them. The district court did not clearly error in finding factor (k) favored Sherri Lindberg.

### L

[¶ 23] Chris Lindberg argues the court erred in finding factor (m) favored Sherri Lindberg. Under factor (m), the court considers "[a]ny other factors ... relevant to a particular child custody dispute." N.D.C.C. § 14–09–06.2(1)(m). The district court did not explicitly state it found factor (m) favored Sherri Lindberg, but the language of the court's finding demonstrates it found this factor favored Sherri Lindberg. In finding factor (m) favored Sherri Lindberg, the district court focused on Sherri Lindberg being the consistent parent. The district court stated that "Sherri has lived in the same location and had the same part-time employment for nearly four years. She is the more

constant, stable, and consistent parent." The district court also discussed Sherri Lindberg's willingness to allow Chris Lindberg's schedule to dictate his visitation schedule. Chris Lindberg argues the court erred in finding this factor favored Sherri Lindberg because the district court failed to consider Sherri Lindberg's interference with visitation. Chris Lindberg claims Sherri Lindberg has interfered with his relationship and with his relatives' relationship with the children by denying them visitation on numerous occasions. The record reflects Sherri Lindberg did interfere with Chris Lindberg's visitation. However, the evidence also establishes the visitation problems subsided after the court entered its interim visitation order in December 2005. The evidence demonstrates Sherri Lindberg has been the constant parent in the children's lives. The district court's finding that factor (m) favored Sherri Lindberg is not clearly erroneous.

[¶ 24] The district court had a difficult decision to make in determining which of these two fit parents should be awarded custody. Since the evidence supports the district court's award of custody to Sherri Lindberg, we conclude the court did not clearly err in analyzing the best interest factors under N.D.C.C. § 14–09–06.2. In addition, after reviewing the entire record, we are not left with definite and firm conviction a mistake has been made.

### III

[¶ 25] Chris Lindberg argues the district court violated his constitutional right to parent his children when it denied him shared physical custody. Parents have a constitutional right to parent their children. *Hoff v. Berg*, 1999 ND 115, ¶ 15, 595 N.W.2d 285. Chris Lindberg's constitutional right to parent his children was not violated because the court granted him

liberal visitation. A parent's constitutional right to parent his children does not include a constitutional right to shared physical custody of the children. We dismiss Chris Lindberg's constitutional claim because his constitutional right to parent his children was not violated.

## IV

[¶ 26] Chris Lindberg argues the district court's award of spousal support is clearly erroneous because Sherri Lindberg testified she does not need spousal support, Sherri Lindberg does not plan on moving out of her parents' home and he does not have the ability to pay spousal support.

[¶ 27] "Under N.D.C.C. § 14–05–24.1, a trial court in a divorce case 'may require one party to pay spousal support to the other party for any period of time.'" *Reineke v. Reineke*, 2003 ND 167, ¶ 6, 670 N.W.2d 841(quoting *Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586). An award of spousal support is a "finding of fact which will not be set aside on appeal unless clearly erroneous." *Solem v. Solem*, 2008 ND 211, ¶ 5, 757 N.W.2d 748. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Krueger v. Krueger*, 2008 ND 90, ¶ 7, 748 N.W.2d 671.

[¶ 28] In determining if an award of spousal support is appropriate, "the district court must consider the relevant factors under the *Ruff–Fischer* guidelines." *Overland v. Overland*, 2008 ND 6, ¶ 16, 744 N.W.2d 67; *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952). Factors to consider under the *Ruff–Fischer* guidelines include:

"the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Krueger*, 2008 ND 90, ¶ 8, 748 N.W.2d 671 (quoting *Sommer v. Sommer*, 2001 ND 191, ¶ 9, 636 N.W.2d 423). When making a spousal support determination, "the district court is not required to make specific findings on each factor, provided we can determine the reasons for the court's decision." *Krueger*, at ¶ 8. "Spousal support awards must also be made in consideration of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay." *Overland*, at ¶ 16.

[¶ 29] The district court ordered Chris Lindberg to pay Sherri Lindberg spousal support. In determining Sherri Lindberg was entitled to spousal support, the district court stated, "The Court finds that Sherri is in need of spousal support and Christopher has the ability to pay. Christopher shall pay to Sherri the amount of $750.00 per month for a period of 48 months." The district court's opinion contains some *Ruff–Fischer* factor findings. At the time of trial, Christopher Lindberg was thirty-seven years old and Sherri Lindberg was thirty-nine years old. In analyzing Sherri Lindberg's health and earning ability, the court found Sherri Lindberg "is in good health and able to work but is currently underemployed and capable of earing [sic] $10.00 to $13.00 per hour or slightly over $20,000.00 per year." The court stated Sherri Lindberg has an associate degree in nursing, "but has not been employed as an

LPN for approximately 13 years." The court found Chris Lindberg was "in good health and able to work." The court stated Chris Lindberg has a "four-year degree in Electrical Engineering from North Dakota State University and is currently working on his Master's Degree at University of Mary."

[¶ 30] The court found Sherri Lindberg "has gross earnings of $240.00 per month" and Chris Lindberg has gross monthly earnings of $5,620. In looking at the necessities of each party, the court determined Chris Lindberg's monthly expenses totaled $2,510. The court found that Sherri Lindberg "is currently living in her parents home and has no expenses relating to mortgage payments, utilities, etc. However, Sherri testified that she plans on moving out of her parents home once the divorce is finalized. Therefore, the Court finds Sherri's anticipated monthly living expenses to be $2,915.00."

[¶ 31] Although the district court made findings under some of the *Ruff–Fischer* factors, it did not provide analysis of Sherri Lindberg's underemployment other than that she is capable of earning $20,000 per year, nor her need for spousal support or Chris Lindberg's ability to pay spousal support. We have said, "We will not set aside the trial court's determinations on property division or spousal support for failure to explicitly state the basis for its findings if that basis is reasonably discernible by deduction or inference." *Routledge v. Routledge*, 377 N.W.2d 542, 545 n. 1 (N.D.1985); *Meyer v. Meyer*, 2004 ND 89, ¶ 23, 679 N.W.2d 273 (Maring, J., dissenting in part and concurring in part). We are unable to discern the basis for the district court's spousal support decision because the court's opinion contains contradictory findings.

[¶ 32] We assume the district court awarded Sherri Lindberg spousal support based upon its finding that she was going to move out of her parents' home after the divorce became final and that she would incur $2,915 in monthly expenses. The district court's finding Sherri Lindberg plans on moving out of her parents' home once the divorce is finalized is not supported by the evidence.

[¶ 33] At trial, when Sherri Lindberg was asked if she felt she needed spousal support, she stated, "Yes, should I move out, which I will be doing eventually." On cross-examination, Sherri Lindberg was asked about her intentions on moving out of her parents' home.

Q. And I think your words on direct was that you may eventually be moving?

A. Yes.

Q. So it sounds like you may not move or you may move, it's uncertain at this time?

A. Yes.

Q. So you haven't made any decisions about that?

A. No, I just checked into stuff for down the road. Checked into the nursing part of it too.

Q. And in prior affidavits submitted to this Court you've never indicated any desire or intent to move from your parent's house have you?

A. No.

Q. In fact, you've said that you think it's a good idea for the children to continue to live in your parent's home, did you not.

A. Yes, I do.

Q. So you think it would not be in the children's best interests for you to move from the home?

A. Well, right now I can be with them and I can work where I'm working so I can be a mom to them, and they don't have to be in daycare.

Q. And your parent's want you to continue to live with them, do they not?
A. Yes. That was always my dream to stay home with my children, to be a wife, and to have children and stay home with them and I'm very blessed that it's worked out this way.
Q. If you agree that it would be best for your children to remain in your parents home, under what circumstances would you ever move?
A. I don't know, unless mom and dad want me to go, I don't know, I mean, it's just something to think about. I don't know if they will always be around.
Q. If you don't move, you don't need any spousal support, isn't that true?
A. Yes, probably, yes.
Q. You've been in your parents home for about three and a half years, correct?
A. Yes.
. . . .
Q. Your parents home provides a stable and routine environment, I think you indicated on direct?
A. Yes.
Q. And you believe that disrupting that routine would not be good for them?
A. Yes. And I thank God that my family doesn't ask for rent because there's many that do, and that's something they haven't asked for that they probably should be.

Sherri Lindberg's testimony contradicts the court's finding that Sherri Lindberg "plans on moving out of her parents home once the divorce is finalized." Further, when the court analyzed Sherri Lindberg's earning ability, the district court determined Sherri Lindberg was underemployed. A finding of underemployment is a consideration in determining a party's need for spousal support. We are unable to discern if the district court considered Sherri Lindberg's underemployment when it determined her need for spousal support. Without further explanation regarding Sherri Lindberg's need for spousal support, we are unable to determine whether the district court's award of spousal support is clearly erroneous. We reverse and remand to the district court for further proceedings regarding Sherri Lindberg's need for, and Chris Lindberg's ability to pay, spousal support.

V

[¶ 34] The trial judge who presided over this matter has retired. It is therefore necessary, and we direct, that this case be reassigned by the presiding judge of the judicial district. We note the successor judge must comply with the requirements of Rule 63, N.D.R.Civ.P., regarding certification of familiarity with the record and the conduct of any further proceedings.

VI

[¶ 35] We affirm the district court's judgment awarding custody to Sherri Lindberg, and we reverse and remand the district court's spousal support award for further proceedings consistent with this opinion.

[¶ 36] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

DALE V. SANDSTROM, concurs in the result.

MARING, Justice, concurring in part and dissenting in part.

[¶ 37] I concur in parts II and III of the Majority opinion concluding that the district court did not err in its custody award and that Christopher Lindberg's constitutional right to parent his children was not violated. I respectfully dissent

from part IV of the Majority opinion. I would affirm the district court's decision in its entirety. The district court's findings of fact are supported by the evidence and its conclusions of law reflect it complied with the law and considered Sherri Lindberg's need for spousal support and Christopher Lindberg's ability to pay spousal support.

I

[¶ 38] The Majority concludes the district court did not analyze Sherri Lindberg's need for spousal support and its findings on spousal support are not supported by the evidence. I disagree.

[¶ 39] First, the district court properly considered Sherri Lindberg's need for spousal support. The Majority, at ¶ 31, concludes the district court "did not provide analysis of Sherri Lindberg's ... need for spousal support." I am of the opinion that the Majority is misconstruing the district court's findings. In its findings of fact, the district court stated:

Monthly Living Expenses for Sherri. The Court finds that Sherri is currently living in her parents [sic] home and has no expenses relating to mortgage payments, utilities, etc. However, Sherri testified that she plans on moving out of her parents [sic] home once the divorce is finalized. Therefore, the Court finds Sherri's anticipated monthly living expenses to be $2,915.00 as listed on Exhibit #9—Anticipated Monthly Living Expenses for Sherri Lindberg and Three Minor Children.

We have previously explained that when a district court awards spousal support, it must consider the needs of the spouse seeking spousal support. Overland v. Overland, 2008 ND 6, ¶ 16, 744 N.W.2d 67. The district court's finding of fact clearly illustrates that the district court considered Sherri Lindberg's need for spousal support when it awarded her spousal support.

[¶ 40] Second, the Majority, at ¶ 32, concludes the district court's finding that Sherri Lindberg was going to move out of her parents' home was not supported by the evidence. I disagree. The evidence supports the district court's conclusion that Sherri Lindberg will need spousal support because she will be moving out of her parent's home.

[¶ 41] At trial, Sherri Lindberg entered into evidence an exhibit entitled, "Anticipated Monthly Living Expenses for Sherri Lindberg and Three (3) Minor Children." This exhibit provided that Sherri Lindberg expected she would incur expenses of $2,915 a month. Sherri Lindberg testified that the $2,915 monthly expenses were based on costs after she moves out of her parents' home. Those expenses include $900 a month in rent for housing for Sherri Lindberg and the three children. Sherri Lindberg explained that $900 a month for housing would be at the "low to medium end" for cost of housing for four people. When asked if she would need spousal support, Sherri Lindberg answered, "Yes, should I move out, which I will be doing eventually." Sherri Lindberg was then asked what amount of spousal support she would need based on her anticipated living expenses, her current earnings, and her future plans. She responded that she would need $750 a month "[u]ntil the kids are gone or until [she] remarr[ies]." Sherri Lindberg testified regarding the future home she would provide for the children when she moved out of her parents' home. After inquiring about the living arrangements at Sherri Lindberg's parents' home, her attorney asked, "And understanding that's not forever, but do you think that any environment you move the children into in the future will provide the same sort of stability?" Sherri Lind-

berg answered that it would. As the Majority indicates, Sherri Lindberg was then cross-examined about her plans to move out of her parents' home. The Majority declines to mention, however, that on redirect, Sherri Lindberg indicated that she was uncertain about her future living arrangements because she was unable to make any plans with any certainty until the divorce was over.

[¶ 42] The evidence also reflects that Christopher Lindberg believed that Sherri Lindberg would move out of her parents' home. When Christopher Lindberg discussed the children's residences, he acknowledged that the children's residence at Sherri Lindberg's parents' home was only a "temporary residence." Furthermore, Christopher Lindberg's written final argument to the district court acknowledges that Sherri Lindberg may move from her parents' home. In his argument to the court, he asserted that best interest factor (d) favored him because Sherri Lindberg was "claiming monthly expenses which assumes that she will be moving." He also argued that "Sherri's situation regarding housing is less certain," again implying that Sherri Lindberg would be moving out of her parents' home.

[¶ 43] The district court was presented with evidence of Sherri Lindberg's anticipated monthly living expenses after she moves out of her parents' home. She testified that she will eventually be moving out, she was unable to make certain plans about moving out until after the divorce was finalized, and Christopher Lindberg testified that her residence with her parents was merely a "temporary residence." The evidence indicates that both parties believed Sherri Lindberg's parents' residence was only a temporary residence and she would not be living there indefinitely. We review a district court's factual findings under the clearly erroneous standard

of review. *See Hitz*, 2008 ND 58, ¶ 10, 746 N.W.2d 732. Under that standard of review, "[t]his Court views the evidence in the light most favorable to the findings, and the district court's findings of fact are presumptively correct." *Id.* In other words, if there are two permissible views of the district court's findings of fact, we hold in favor of the district court's findings. *See Gillmore v. Morelli,* 472 N.W.2d 738, 740 (N.D.1991) ("[A] choice between two permissible views of the evidence is not clearly erroneous."). "[W]e do not reweigh the evidence or reassess the credibility of witnesses." *Jelsing v. Peterson,* 2007 ND 41, ¶ 11, 729 N.W.2d 157. The district court heard the testimony, assessed the witnesses' credibility, and weighed the evidence. The district court accomplished its task and evidence in the record supports its findings. A finding of fact is clearly erroneous if there is no evidence to support it. *Id.* On appeal, the Majority is reweighing the evidence and substituting its judgment for the district court's. Our Court does not reverse a district court merely because we may have reached a different result. *See Solem v. Solem,* 2008 ND 211, ¶ 5, 757 N.W.2d 748 ("We will not reverse the trial court merely because we may have viewed the evidence differently.").

## II

[¶ 44] The district court properly considered Christopher Lindberg's ability to pay Sherri Lindberg $750 per month in spousal support for a forty-eight-month period. The Majority, at ¶ 31, asserts that the district court "did not provide analysis of Chris Lindberg's ability to pay spousal support." As a result, the Majority, at ¶ 33, remanded to the district court for further proceedings regarding Christopher Lindberg's ability to pay spousal support. The Majority ignores the district court's findings on Christopher Lindberg's ability

to pay Sherri Lindberg $750 per month in spousal support. The Majority declines to mention the district court found "Christopher['s] monthly living expenses to be $2,510.00 as Christopher testified to at trial"; "Christopher is employed by Phoenix International ... and has gross earnings of approximately $4,584.00 per month"; and "Christopher is also a member of the Army National Guard and has gross earnings of approximately $1,036.00 per month." Thus, Christopher Lindberg's total gross income is $5,620 per month. Under the child support guidelines, the district court ordered Christopher Lindberg to pay Sherri Lindberg $1,368 per month for child support for the parties' three children. Adding the child support, spousal support, and Christopher Lindberg's monthly living expenses together, his monthly obligations would be $4,628. In addition, he will not pay income tax on the $750 per month of spousal support and he contends his monthly expenses are $2,381 per month, not $2,510 per month. I cannot agree with the Majority that the district court did not provide any analysis to support its conclusion that Christopher Lindberg has the ability to pay. Rather, it appears that the district court's findings on Christopher Lindberg's monthly living expenses, child support obligation, and monthly earnings are precisely the findings a district court should make in analyzing whether a party has the ability to pay spousal support.

[¶ 45] I am uncertain as to what further rationale the district court must give pertaining to Christopher Lindberg's ability to pay spousal support. Based on the evidence in the record and the district court's findings, I am of the opinion that the district court did not clearly err in finding Christopher Lindberg has the ability to pay $750 per month in spousal support for a forty-eight-month period.

III

[¶ 46] In addition, I am of the opinion that the district court's findings of fact support its award of spousal support in this case, even if the Majority's interpretation of the evidence is accepted and the inference drawn that Sherri Lindberg is never moving out of her parents' home. The Majority mentions, but then ignores that any spousal support award is to be based on a consideration of the *Ruff–Fischer* guidelines. *See Overland v. Overland*, 2008 ND 6, ¶ 16, 744 N.W.2d 67; *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952). Factors to consider under the guidelines include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 7, 693 N.W.2d 1. "The district court's decision should be rationally based, but it is not required to make specific findings on each factor." *Id.* Our Court no longer requires separate proof of "disadvantage" for an award of spousal support. *Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157. In addition, our Court has said:

> This court has looked favorably upon awards of "rehabilitative" spousal support ... rehabilitative awards are typically limited in duration and are designed to afford disadvantaged spouses the opportunity to gain the education, training, and experience necessary to

become self-sufficient. We have noted that there are no rigid rules for determining whether or not to award alimony and the amount of such an award. The determination of a just award is within the discretion of the trial court and will depend upon the facts and circumstances of each case.

*Beals v. Beals*, 517 N.W.2d 413, 416 (N.D. 1994) (citations omitted); N.D.C.C. § 14–05–24.1 ("Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time.").

[¶ 47] In the present case, the district court addressed the majority of the *Ruff–Fischer* guidelines and found that Christopher Lindberg is thirty-seven years of age and Sherri Lindberg is thirty-nine years of age. The district court found the parties were married on February 4, 1994, and therefore were married fourteen years. *See Wold v. Wold*, 2008 ND 14, ¶ 17, 744 N.W.2d 541 (upholding a district court's finding that a fifteen-year marriage was a "long-term marriage"). The court found the parties had three children, ages ten years, eight years, and three years and awarded physical custody to Sherri Lindberg. The court considered the health of the parties finding Christopher Lindberg is in good health and able to work and Sherri Lindberg is in good health and able to work. The court considered the earning ability of each of the parties. The court found Sherri Lindberg is capable of earning $10 to $13 per hour or slightly over $20,000 per year; Sherri Lindberg is employed by Fargo Moravian Church and has gross earnings of $240 per month; and Sherri Lindberg has an associate degree in nursing, but has not been employed as an LPN for approximately thirteen years. With regard to Christopher Lindberg, the court found he had held several jobs. He was in the Army full time, then a National Guard member, and then worked at Phoenix International in Fargo, North Dakota, as an engineer. Christopher Lindberg has a four-year degree in electrical engineering. The court found he is also pursuing a Master's degree in business administration through the University of Mary. With regard to his current earnings, the court found his gross income from his employment and the National Guard is $5,620 a month. This totals approximately $67,440 a year compared to Sherri Lindberg's earning capacity of $20,000 a year. We have said that a large disparity in income is an appropriate consideration in awarding spousal support. *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D.1994). The property and its income-producing capacity are also to be considered. *Id.* The court divided the property equally between Christopher Lindberg and Sherri Lindberg. A review of the property division reveals Sherri Lindberg did not receive any income-producing assets. Only if Christopher Lindberg took the option of paying Sherri Lindberg a lump sum of $20,044 to equalize the property division rather than executing a Qualified Domestic Relations Order from his 401(k) plan in favor of Sherri Lindberg would she receive some interest income from her assets. Sherri Lindberg received a vehicle, some personal property, $2,700 cash, and a Roth IRA. She has no home for herself or her children. The court can also take into consideration the parties' conduct during the marriage and their station in life. *Id.* The district court found that Christopher Lindberg had pursued a full-time military career and had been deployed overseas or stationed at various locations in the United States resulting in him living with his family for "approximately five (5) of the ten (10) years of marriage." Sherri Lindberg was allowed to accompany Christopher Lindberg for short periods to Fort Hood,

Texas, Fort Benning, Georgia, and Fort Bragg, North Carolina. The court found that "[d]uring all their military separations, Sherri [Lindberg] and the children would move back to Fargo, North Dakota and live with her parents as they didn't own a home." Sherri Lindberg was a homemaker and the primary caretaker of the parties' three young children during the marriage, deferring always to her husband's career.

[¶ 48] The district court's findings clearly provide the basis for the award of spousal support of $750 a month for 48 months. Sherri Lindberg has need for spousal support. She has monthly living expenses currently and, should she leave her parents' home, will incur even higher expenses. The argument that she does "not need" spousal support is meritless. I find it offensive that because she is not paying rent and utilities to her parents that fact somehow relieves Christopher Lindberg of his responsibilities. Sherri Lindberg testified that her parents had not asked her to pay rent and utilities. It is obvious why they had not on these facts, which establish she has no money with which to pay them. Indeed, she cannot move out of her parents' home or even plan to until she has received spousal support. This Court has never held spousal support is dependent on whether a party's parents demand payment for rent and utilities. Sherri Lindberg is the custodial parent of three young children, who need her physical and emotional care. She has no home. Sherri Lindberg has not been in the workforce since 1996. Prior to 1996, she had only worked as an LPN for about four years. She has been a homemaker and a mother during her marriage to Christopher Lindberg. Through this role, she has supported his career throughout the marriage. The court found the most she can earn is approximately $20,000 per year, whereas Christopher Lindberg can earn $67,440 per year. This is a large disparity in earning ability. Even if Sherri Lindberg is able to go back to work full time, she will earn only one-third of what Christopher Lindberg earns. In fact, four years of spousal support will do little to balance the burden on her reduced standard of living. *See Weir v. Weir,* 374 N.W.2d 858, 864 (N.D.1985) (holding a consideration in awarding spousal support is balancing the burdens created by the divorce when it is impossible to maintain two households at the pre-divorce standard); *see also Wold,* 2008 ND 14, ¶ 14, 744 N.W.2d 541. Under the facts of this case, even if Sherri Lindberg was able to step into the workplace and earn today enough to meet her minimal needs, she is entitled to spousal support under the district court's application of the *Ruff–Fischer* guidelines. We have upheld rehabilitative spousal support when the recipient is working full time. *See, e.g., Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994); *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992); *Williams v. Williams,* 302 N.W.2d 754, 758 (N.D.1981). In *Wahlberg,* this Court stated, "The *need* which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution." 479 N.W.2d at 145 (emphasis added).

[¶ 49] The findings of the district court in this case are not clearly erroneous and support the award of spousal support.

[¶ 50] Finally, if the district court reconsiders the award of spousal support on remand, it may also reconsider its division of property. Awards of spousal support and property distributions are considered together and an adjustment of one may impact the other. *See Meyer v. Meyer,* 2004 ND 89, ¶ 16, 679 N.W.2d 273 ("[A] trial court cannot consider issues of prop-

erty division and spousal support separately in a vacuum, but must examine those issues together."); *Stoppler v. Stoppler,* 2001 ND 148, ¶ 21, 633 N.W.2d 142 ("The trial court may reconsider the issue of spousal support when it redetermines the property distribution."). If the district court finds Sherri Lindberg does not need rehabilitative spousal support or Christopher Lindberg does not have the ability to pay spousal support, it may consider whether Sherri Lindberg is entitled to a greater property distribution.

## IV

[¶ 51] I am of the opinion that the district court's order contains findings of fact that support its conclusion that Sherri Lindberg was in need of rehabilitative spousal support and Christopher Lindberg had the ability to pay. Therefore, I would affirm the district court's decision in its entirety.

[¶ 52] Mary Muehlen Maring