**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**JUNE 21, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 114

Vivian Ofosu Asiama,      Plaintiff

v.

Gabriel Asumeng,      Defendant and Appellant

and

State of North Dakota,      Statutory Real Party in Interest

## No. 20220307

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jay D. Knudson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justice Bahr joined. Justice Tufte filed an opinion concurring in part and dissenting in part, in which Justice McEvers joined.

Pamela F. Coleman, Grand Forks, ND, for defendant and appellant; submitted on brief.

**Asiama v. Asumeng, et al.**
**No. 20220307**

**Crothers, Justice.**

[¶1] Gabriel Asumeng appeals from a judgment dividing the marital estate and awarding Vivian Asiama primary residential responsibility of the parties' children. We conclude the district court did not clearly err by awarding Asiama primary residential responsibility; however, the court erred in its distribution of the marital estate. We affirm in part, reverse in part and remand.

I

[¶2] Asumeng and Asiama married in Ghana in 2011 and have two children, born in 2014. In 2018, Asumeng accepted a job as a physician with a Grand Forks medical facility. Before moving to Grand Forks, the parties lived in Ghana, California and Ohio. In addition, Asiama periodically spent time in the Philippines to attend nursing school. In April 2019, Asumeng purchased the marital home, using $80,000 as a down payment.

[¶3] In July 2019, the parties decided the marriage was over, and Asiama sued Asumeng for divorce in June 2020. In August 2020, the district court entered an interim order awarding Asumeng primary residential responsibility of the children, awarding Asiama parenting time and spousal support and reserving child support. In November 2021, Asumeng moved to relocate to either Ghana or Texas with the children. The court denied the motion as premature because there had been no final decision on residential responsibility.

[¶4] After a one-day trial in June 2022, the district court entered a judgment dividing the marital estate and awarding Asiama primary residential responsibility of the children. The court valued the property as of July 21, 2019; the date the parties separated. The court held Asumeng responsible for all of the marital debt, ordered the sale of the home in Grand Forks with the proceeds split evenly and denied Asiama spousal support.

[¶5]   Asumeng argues the district court erred in distributing the marital estate.

[¶6]   The district court's distribution of marital property will not be disturbed on appeal unless its factual findings are clearly erroneous. *Crichlow v. Andrews*, 2023 ND 45, ¶ 7, 987 N.W.2d 666. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶7]   When a divorce is granted, the district court must equitably divide the marital property after considering the relevant factors under the *Ruff-Fischer* guidelines. N.D.C.C. § 14-05-24(1); *Buchholz v. Buchholz*, 2022 ND 203, ¶ 24, 982 N.W.2d 275. The *Ruff-Fischer* guidelines include the following:

> "The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Crichlow*, 2023 ND 45, ¶ 8. The court is not required to make specific findings on each factor, but it must explain the rationale for its decision. *Willprecht v. Willprecht*, 2020 ND 77, ¶ 19, 941 N.W.2d 556. The property distribution does not need to be equal to be equitable and a substantial disparity must be explained. *Id.*

[¶8]   Here, the district court discussed all of the *Ruff-Fischer* factors. The court found Asumeng can earn over $800,000 annually as a physician, and Asiama can "earn a significant wage [as a nurse], although not to the extent that [Asumeng] is able." The court awarded $95,953 in assets to Asumeng and $96,055 to Asiama. The court held Asumeng responsible for all of the $507,323 in marital debt. Over sixty percent of the debt was comprised of Asumeng's

$316,442 in student loans. The court found Asumeng "has far more financial ability to pay for the debt." "Given [Asumeng]'s income during the parties' marriage, there is no reason that [Asiama] should be left with any debt from the marriage." Because the court awarded all of the marital debt to Asumeng, it did not award Asiama spousal support.

[¶9] The district court valued the marital assets and debts as of July 21, 2019, except the marital home. Under N.D.C.C. § 14-05-24(1) (2017), the district court was required to value the marital estate on the separation date. Absent an agreement by the parties to the contrary, the "court did not have discretion to include property acquired after separation[.]" *Berdahl v. Berdahl*, 2022 ND 136, ¶ 18, 977 N.W.2d 294.

[¶10] Asumeng testified he purchased the marital home in April 2019 for $399,000, with a down payment of $80,000. The court found the home was acquired before the valuation date; however, the court lacked "sufficient information to calculate [Asiama's] share of equity in the marital home as of the time of valuation." The court concluded "the only equitable way to divide the equity from the marital home fairly is to have the parties sell it and split the proceeds."

[¶11] Under N.D.C.C. § 14-05-24(1), the district court must value the marital property as of the valuation date. "[T]he court must determine the [marital] property's total value before making an equitable distribution." *Feist v. Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817. The court's failure to value the marital home as of July 21, 2019, was induced by an erroneous view of the law. The home was purchased only three months before the valuation date. The down payment (equity) was $80,000. Any payment of mortgage principal and increase or decrease in market value during the three-month period would be de minimis in a marital estate of this size. *See Halvorson v. Halvorson*, 482 N.W.2d 869, 872 (N.D. 1992) ("Assuming that the court erred in its valuation, it was de minimis and an insignificant error that does not justify reversal in a case involving a marital estate of over $600,000."). Therefore, the district court had all the information needed to equitably divide the shared value of the home. We reverse the court's distribution of marital property, and remand for

an equitable distribution. Because property division and spousal support are interrelated and intertwined, the court may consider its spousal support decision on remand. *Messmer v. Messmer*, 2020 ND 62, ¶ 21, 940 N.W.2d 622.

## III

[¶12] Asumeng claims the district court erred by awarding Asiama primary residential responsibility of the parties' children.

[¶13] A district court's decision on residential responsibility is a finding of fact reviewed under the clearly erroneous standard. *Cty. of Sargent v. Faber*, 2022 ND 155, ¶ 6, 978 N.W.2d 652. The court must consider the best interests of the child under N.D.C.C. § 14-09-06.2(1) in awarding residential responsibility. *Faber*, at ¶ 7. The best interest factors include: (a) the love, affection, and emotional ties between the parents and child; (b) the parents' ability to provide the child a safe environment; (c) the parents' ability to meet a child's developmental needs; (d) the sufficiency and stability of each parent's home environment; (e) each parent's ability and willingness to encourage a close and continuing relationship with the other parent; (f) the parents' moral fitness; (g) the parents' mental and physical health; (h) the child's home, school, and community record; (i) the child's reasonable preference; (j) evidence of domestic violence, (k) the child's interaction and relationship with another person who resides in or is present in a parent's home; (l) a parent's making of false allegations against the other parent; and (m) other relevant factors. N.D.C.C. § 14-09-06.2(1).

[¶14] Here, the district court found factors (a), (b), (c), (e), (f), (g), (i), (j), (k) and (l) favored neither party or did not apply. The court found factors (d), (h) and (m) favored Asiama.

[¶15] Factor (d) relates to the sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community. N.D.C.C. § 14-09-06.2(1)(d). The district court made extensive findings on this factor and found it strongly favored Asiama. The court found Asiama did not intend to relocate and she and the children

4

would stay in Grand Forks if she was awarded primary residential responsibility. The court found in the past three years the children have made connections in Grand Forks and have done well in school. The court found Asumeng intended to move with the children to Ghana or Texas if he was awarded primary residential responsibility. The court found "[t]here seems to be little plan for the children if [Asumeng] is awarded primary residential responsibility aside from the fact they are moving away from Grand Forks."

[¶16] As to factor (h), the home, school, and community records of the children and the potential effect of any change, the district court found this factor strongly favored Asiama. The court found the children have only attended school in Grand Forks and they enjoy living in Grand Forks. Asiama testified she "intend[ed] on remaining in the Grand Forks area." The court found Asumeng did not intend to stay in Grand Forks. The court found, "It is always desirable to maintain continuity in the children's home, school and community and in this case that would be accomplished by having the children residing with [Asiama] continuing to attend school and reside in Grand Forks."

[¶17] Under factor (m), the district court may consider "[a]ny other factors . . . relevant to a particular parental rights and responsibilities dispute." N.D.C.C. § 14-09-06.2(1)(m). The court addressed the *Stout-Hawkinson* factors in its discussion of factor (m). The *Stout-Hawkinson* factors are considered when a custodial parent requests to change the residence of a child to another state under N.D.C.C. § 14-09-07. *Dvorak v. Dvorak*, 2006 ND 171, ¶ 12, 719 N.W.2d 362. The *Stout-Hawkinson* factors include:

> "1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,
>
> 2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,
>
> 3. The integrity of the noncustodial parent's motives for opposing the move,

5

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation."

*Dvorak*, at ¶ 13.

[¶18] Before discussing the *Stout-Hawkinson* factors, the district court recognized this was not "a *Stout-Hawkinson* situation" because it was "making an initial determination of primary residential responsibility." The court addressed the *Stout-Hawkinson* factors because "the parties have raised the issue." The court stated it "considered [Asumeng]'s intention to relocate to either Ghana or Texas when the Court performed its analysis of the best interest factors." Specifically, the court discussed Asumeng's potential move in its analysis of factors (d) and (h).

[¶19] After discussing each of the *Stout-Hawkinson* factors, the district court stated:

"While the Court's analysis of the *Stout-Hawkinson* factors is not determinative in this matter, the Court still finds it is in the children's best interest to not relocate to Ghana for the reasons outlined above. If the Court had to make a determination under the *Stout-Hawkinson* factors it would deny [Asumeng]'s request to allow the children to reside primarily with him in Ghana. Further, for the same reasons, the request to relocate the children to Texas would also be denied. When a person has children with another person, he must accept that having those children might at some point have an impact on his ability to move wherever he wants whenever he wants. The Court finds this factor favors [Asiama]."

Because factor (m) allows a court to consider other relevant factors in a parental rights and responsibilities dispute, the court did not err by addressing the *Stout-Hawkinson* factors as part of its consideration of factor (m).

[¶20] The district court's findings on the best interest factors are supported in the record, and we are not left with a definite and firm conviction a mistake was made. The court did not clearly err by awarding Asiama primary residential responsibility.

IV

[¶21] Asumeng asserts the district court erred by limiting the trial to one day. He argues he was prejudiced because he could not get all of his testimony and exhibits before the court.

[¶22] "A district court has broad discretion over the presentation of evidence and the conduct of trial, but it must exercise its discretion in a manner that best comports with substantial justice." *Jalbert v. Eagle Rigid Spans, Inc.*, 2017 ND 50, ¶ 9, 891 N.W.2d 135. In exercising its discretion, the court may impose reasonable restrictions on the length of the trial and on the number of witnesses allowed. *Id.* A court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if it misinterprets or misapplies the law or if its decision is not the product of a rational mental process. *Id.*

[¶23] At the beginning of trial, Asumeng's attorney objected to the length of trial, arguing one day would not be sufficient for all of the issues to be decided. In response, the district court indicated that "since November of 2021 it's been set for a one-day trial. So if you wanted to object to that or have more time for trial, you should have filed some sort of request seven, eight months ago." When asked whether she wanted a continuance, Asumeng's attorney stated, "I don't want to continue it. No, your Honor. It's been almost two years already."

[¶24] Asumeng claims the one-day trial prejudiced him; however, he does not explain what additional testimony or exhibits he would have added if the trial had been scheduled for more than one day. The district court noted the trial had been scheduled for one day since November 2021. The court gave him the opportunity to continue the trial, but he declined. The court did not abuse its discretion by limiting the duration of trial to one day.

# V

[¶25] We have considered Asumeng's remaining arguments and conclude they are either without merit or not necessary to our decision. The judgment is affirmed in part, reversed in part, and remanded.

[¶26] Jon J. Jensen, C.J.
  Daniel J. Crothers
  Douglas A. Bahr


**Tufte, Justice, concurring in part and dissenting in part.**

[¶27] I would affirm the judgment in its entirety. I agree with the majority opinion except to the extent that it reverses the district court's property distribution for failing to assign a value to the marital home. I would not reverse the district court's property distribution because, on this record, I believe the error is harmless.

[¶28] The majority opinion correctly points out that the district court should have determined the value of the home as of the July 2019 valuation date. We have often said that the court must determine the total value of all marital property before making an equitable distribution. *See, e.g., Buchholz v. Buchholz*, 2022 ND 203, ¶ 13, 982 N.W.2d 275; *Feist v. Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817; *Graves v. Graves*, 340 N.W.2d 903, 906–07 (N.D. 1983). The parties provided the court sufficient evidence to place a value on the home. Asiama's proposed property and debt distribution indicated both parties valued the house at $358,791 and requested the home be sold and proceeds divided 50/50. Asumeng's Rule 8.3 pretrial conference statement indicated a value of $355,000 and an associated mortgage of $312,150. This statement proposed $44,000 be paid to Asiama from the sale of the home, and listed the house and mortgage as Asumeng's assets ($355,000 less $312,150 resulting in a net value of $42,850). Asumeng also testified that he paid approximately $80,000 as a down payment when he purchased the house only three months before the valuation date. Before making an equitable distribution, the court

8

should have placed a value on the marital home within the range of this evidence.

[¶29] This error is harmless because both parties agreed the house should be sold. The district court found this was a long-term marriage and an equal division of marital assets would be equitable. In furtherance of that equitable objective and in consideration of the circumstances of the parties, it ordered that the marital home be sold and the proceeds be divided equally between the parties.

[¶30] Any real estate valuation will be approximate. Between a court's valuation and a later sale, house prices fluctuate. There are also commissions and other transaction costs on any sale. To ensure that the estate assets were divided 50-50, the court ordered the house sold and the proceeds divided equally. With that decision, the court ensured that whatever the ultimate sale price of the house, the parties would share equally in that marital asset.

[¶31] To be sure, an equal and in-kind division of an asset without first valuing the asset is not always harmless. *Graves*, 340 N.W.2d at 906–07. In *Graves*, this Court reversed the district court's award of a one-half interest in a business without first valuing the business in part because "the trial court did not indicate whether this award was in the nature of a property settlement or spousal support." The Graves' acrimony toward each other prevented their sharing in joint ownership of the business the court had divided equally between them. *Id.* at 907. Here, unlike in *Graves*, the marital asset that was distributed equally but not specifically valued was ordered to be sold.

[¶32] Regardless of what value the court would have placed on the house, its decision to award each party half of the proceeds of the sale supports the court's determination that each party should receive an equal share of the marital assets. The court could have valued the house at $80,000 and distributed a one-half interest in the house to each party at a value of $40,000. Where each party is awarded 50% of the value of a house as of the valuation date and the house is ordered to be sold, each party will end up with an equal share of the net sale price of the house regardless of the ultimate sale price. By ordering a sale and

9

equally dividing the proceeds, the district court avoided having to award one party a fixed cash value as of the valuation date and assign the other party both the risk of an increase or a decrease in the asset value and the burden of transaction costs.

[¶33] The record indicates the house was sold before oral argument and Asiama filed a satisfaction of judgment indicating Asumeng had paid $79,434.64 to Asiama. This satisfied the judgment to the extent of its requirement that each party receive 50% of the net proceeds of the sale of the marital home. The valuation date was July 2019. The judgment date was August 2022. The house was sold in early 2023. If Asiama was awarded a 50% interest in the home as of the valuation date and the higher net sale price is a result of appreciation in value, then she received no windfall as claimed by Asumeng. Both parties' half-interest would have appreciated the same amount.

[¶34] Because the court ordered the house to be sold and awarded an equitable share of the proceeds to each party, I would conclude the failure to make a finding on the house's value is harmless and would affirm.

[¶35] Lisa Fair McEvers
Jerod E. Tufte

10