**Corrected Opinion Filed 08/21/23 by Clerk of the Supreme Court**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 156

| | |
|---|---|
| Mari Emilie Sayler, | Plaintiff and Appellee |
| v. | |
| Jason Paul Sayler, | Defendant and Appellant |

## No. 20230004

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Anthony S. Benson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Bahr, Justice.

Joshua Nyberg, Fargo, ND, for plaintiff and appellee.

Jacey L. Johnston (argued) and Cassidy A. Violet (on brief), Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Jason Sayler appeals from an amended judgment entered after a bench trial on the issue of parental responsibility. He argues the district court's award of primary residential responsibility to Mari Sayler in Minnesota was procedurally improper because she did not make a motion to relocate the children to Minnesota, the court erred by failing to apply the *Stout-Hawkinson* factors, and the court erred by considering circumstances created by the interim order. He further argues the court's findings on the best interest factors and decision-making authority are clearly erroneous. Finally, he argues the court abused its discretion by awarding attorney's fees. We affirm the amended judgment in part, reverse in part, and remand.

I

[¶2]   The parties married in June 2013 and had two children. The parties separated on October 21, 2021 when Mari Sayler left with the children for Austin, Minnesota.

[¶3]   Mari Sayler filed a summons and complaint in November 2021 initiating divorce and custody proceedings. The complaint specifically alleged Mari Sayler "resides in Austin, Minnesota" and Jason Sayler "resides in Devils Lake, North Dakota." Mari Sayler simultaneously filed an application for ex parte interim order and a motion for interim order. In her application and motion, Mari Sayler requested temporary primary residential responsibility of the children. The motion requested "Mari's parent's home in Austin, Minnesota (where Mari is currently residing) shall be considered the legal residence of the child[ren]." Mari Sayler further alleged in her declaration she and the children reside with her parents in Austin, Minnesota, and addressed the best interest factors based on her Minnesota residence.

[¶4]   The district court found a threat of imminent danger to both Mari Sayler and the children and other circumstances indicating an ex parte interim order is necessary because Mari Sayler's "declaration and exhibits demonstrate that

Filed by Clerk of Supreme Court 08/21/23

Jason is threatening self-harm and that there are serious concerns about his anger and mental health." The court awarded Mari Sayler temporary primary residential responsibility of the children and Jason Sayler no parenting time until further hearing.

[¶5]   Jason Sayler filed an answer and counterclaim, a countermotion for interim order, and a declaration. The answer and counterclaim acknowledged Mari Sayler resides in Austin, Minnesota. The countermotion for interim order requested the district court order Mari Sayler to return the children to Devils Lake, North Dakota. Jason Sayler's declaration addressed the best interest factors based on the children's current residence in Austin, Minnesota.

[¶6]   After a hearing, the district court issued an interim order assessing the best interest factors, noting most of the factors favored neither party but some favored Mari Sayler due to Jason Sayler's mental health issues, domestic violence issues, and the safety of his home. The interim order found Mari Sayler currently lives "with her parents in Austin, MN, along with the parties' two children[.]" The court further explained while her move from Devils Lake, North Dakota to Austin, Minnesota obviously "changed the location and environment of the children" and "certainly upset that continuity[,]" "there were valid reasons Mari chose to leave the marital home with the children and establish residence elsewhere." The court concluded it was in the best interests of the children that Mari Sayler be awarded temporary primary residential responsibility, subject to Jason Sayler's reasonable parenting time, and joint decision-making responsibility.

[¶7]   The parties entered a stipulation for partial judgment regarding division of assets, debts, and spousal support. The stipulation identified Mari Sayler's residence as Austin, Minnesota, and stipulated she currently resides in Minnesota. A two-day trial was held on the remaining child-related issues. The district court entered amended findings and an amended judgment. The court concluded the best interest factors favored Mari Sayler and awarded her primary residential responsibility, in Minnesota, and final decision-making authority regarding medical issues. Jason Sayler appeals.

[¶8]   Jason Sayler argues Mari Sayler did not specifically plead for relocation of the children, he did not receive notice of Mari Sayler's intent to move with the children, and the district court erred in failing to make findings under the *Stout–Hawkinson* relocation factors. *See Stout v. Stout*, 1997 ND 61, ¶¶ 34-37, 560 N.W.2d 903; *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144.

[¶9]   Jason Sayler raises these issues as matters of law. This Court reviews questions of law de novo. *State v. K.J.A.*, 2023 ND 56, ¶ 3, 988 N.W.2d 595; *Twete v. Mullin*, 2020 ND 264, ¶ 3, 952 N.W.2d 91.

A

[¶10] Jason Sayler argues the award of primary residential responsibility to Mari Sayler in Minnesota was procedurally improper because Mari Sayler failed to make the necessary motion to relocate the children to Minnesota.

[¶11] Section 14-09-07, N.D.C.C., governs relocation of the residence of a child after a district court has entered an order establishing residential responsibility. "The purpose of N.D.C.C. § 14-09-07 is to protect the noncustodial parent's visitation rights if the custodial parent seeks to move out of state." *Jelsing v. Peterson*, 2007 ND 41, ¶ 7, 729 N.W.2d 157.

[¶12] Section 14-09-07(3), N.D.C.C., does not apply to this case.[1] Section 14-09-07(1) and (2), N.D.C.C., provides:

> 1. A parent with primary residential responsibility for a child may not change the primary residence of the child to another state

---

[1] Section 14-09-07(3), N.D.C.C., provides:

A court order is not required if the other parent:
  a.  Has not exercised parenting time for a period of one year; or
  b.  Has moved to another state and is more than fifty miles [80.47 kilometers] from the residence of the parent with primary residential responsibility.

except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree.

2. A parent with equal residential responsibility for a child may not change the residence of the child to another state except with consent of the other parent or order of the court allowing the move and awarding that parent primary residential responsibility.

Neither party alleges Mari Sayler had Jason Sayler's consent to move the children to Minnesota. Thus, the issue is whether she was required to obtain a court order under N.D.C.C. § 14-09-07.

[¶13] Section 14-09-07(1) and (2) prohibit a parent from changing a child's primary residence without a court order when an order granting primary or equal residential responsibility exists. *See Maynard v. McNett*, 2006 ND 36, ¶ 21, 710 N.W.2d 369 (holding "*a parent with joint legal and physical custody* may not be granted permission to move with the parties' child, unless the district court first determines the best interests of the child require a change in primary custody to that parent" (emphasis added)); *Paulson v. Bauske*, 1998 ND 17, ¶ 6, 574 N.W.2d 801 ("A *custodial parent* must get judicial permission to move with her child to another state if the noncustodial parent does not consent to the move." (emphasis added)). Mari Sayler moved to Minnesota before initiating these proceedings. An order establishing residential responsibility did not exist when she moved the children to Minnesota. Therefore, N.D.C.C. § 14-09-07(1) and (2) do not apply in this case.

[¶14] Jason Sayler does not provide authority for his position a parent, who has not been awarded primary or equal residential responsibility, and who relocates before initiating proceedings, must obtain permission from the district court to remain at the parent's present residence. Under the facts of this case, we conclude Mari Sayler was not required to obtain the court's permission under N.D.C.C. § 14-09-07 to relocate to—or more accurately, remain in—Austin, Minnesota with the children.

4

[¶15] Jason Sayler also argues the lack of pleading to relocate resulted in lack of proper notice Mari Sayler intended to remain in Austin, Minnesota.

[¶16] Contrary to Jason Sayler's assertion, both parties' pleadings presume Mari Sayler resides in Minnesota. As previously noted, Mari Sayler's complaint specifically alleged Mari Sayler "resides in Austin, Minnesota," and her motion for interim order requested "Mari's parent's home in Austin, Minnesota (where Mari is currently residing)" be considered the legal residence of the children. Her declaration stated she and the children now reside with her parents in Austin, Minnesota and she therein addressed the best interest factors based on her Minnesota residence. Mari Sayler's pleadings gave Jason Sayler notice Mari Sayler intended to reside in Minnesota. This is in part evidenced by Jason Sayler's answer, which acknowledged Mari Sayler resides in Minnesota, and his declaration, which addressed the best interest factors based on the children's current residence in Minnesota. The parties also stipulated Mari Sayler resides in Minnesota.

[¶17] After a hearing on the interim motions, the district court considered the evidence and arguments and entered a detailed interim order. The interim order found Mari Sayler currently lives "with her parents in Austin, MN, along with the parties' two children." The court further found her move from Devils Lake, North Dakota to Austin, Minnesota "changed the location and environment of the children[,]" and "certainly upset that continuity[,]" but "there were valid reasons Mari chose to leave the marital home with the children and establish residence elsewhere." After weighing the best interest factors, including Mari Sayler's move to Minnesota and the reasons for it, the court determined it is in the best interests of the children Mari be awarded primary residential responsibility, subject to Jason Sayler's right to reasonable parenting time.

[¶18] We conclude the pleadings and interim order provided Jason Sayler notice the district court would determine residential responsibility based on Mari Sayler residing in Minnesota and Jason Sayler residing in North Dakota.

C

[¶19] Jason Sayler argues the district court erred in failing to provide analysis or findings under the *Stout–Hawkinson* relocation factors or failing to make a specific finding it would be in the children's best interests to relocate to another state.

[¶20] Relying on *Seay v. Seay*, 2012 ND 179, 820 N.W.2d 705, and *Pember v. Shapiro*, 2011 ND 31, 794 N.W.2d 435, Jason Sayler argues the *Stout-Hawkinson* factors must be analyzed when the initial determination of residential responsibility and motion for relocation are raised in the same proceeding. In *Stout* we noted the inevitability of cases in which an initial primary residential responsibility determination would necessarily have to be made before ruling on a parent's request to relocate. *Stout,* 1997 ND 61, ¶ 54 n. 7. *Seay* and *Pember* stand for the now well-established principle that when the initial determination of residential responsibility and a request to relocate are raised in the same proceeding, generally a district court must first determine primary residential responsibility by applying the best interest factors before addressing the relocation request by applying the *Stout-Hawkinson* factors. *Seay*, at ¶¶ 15-16 (explaining the court should first determine primary residential responsibility by applying the best interest factors and then relocation by applying the *Stout-Hawkinson* factors); *Pember*, at ¶¶ 22-28 (concluding "[t]he district court acted properly by considering Shapiro's relocation request after it had awarded sole physical custody of the children to her using the best interest factors").

[¶21] *Seay* and *Pember* are distinguishable from this case because in neither *Seay* nor *Pember* had the parent moved before initiating proceedings to establish residential responsibility. The parties do not cite, nor have we found, a case addressing whether a district court must apply the *Stout-Hawkinson* factors in a case where a party moves *before* requesting an order establishing primary residential responsibility.

[¶22] This Court has explained the "distinction between an original award of custody and a decision to modify custody." *Wright v. Wright*, 431 N.W.2d 301,

303 (N.D. 1988). "For an original placement of the custody of a child, when parents divorce, the trial court needs to determine only the best interests and welfare of the child. N.D.C.C. § 14-09-06.1. For a motion to modify an original custodial placement, the trial court needs to make a two-step analysis." *Gould v. Miller*, 488 N.W.2d 42, 43 (N.D. 1992). The two issues, in chronological order, are: "(a) whether there has been a significant change of circumstances since the original divorce decree and custody award; and if so (b) whether those changes are such that the best interests of the child would be served by a change in custody." *Wright*, 431 N.W.2d at 303. We have emphasized, "[t]he original custody award revolves solely around the best interests of the children." *Id.* This case involves an original award of (custody) parental responsibility.

[¶23] Mari Sayler's residence was known to the parties and the district court at the time the decree was entered. Thus, in this case, the award of primary residential responsibility and the children's place of residence revolved solely around the best interests of the children. Mari Sayler was not requesting permission to relocate; she was requesting primary residential responsibility based on her current residence. The court weighed the best interest factors, assessing primary residential responsibility with Mari Sayler in Minnesota against Jason Sayler in North Dakota. In weighing the best interest factors, the court addressed Mari Sayler's prior relocation under multiple factors. Among other things, the court found "Mari had good cause to leave the home with the children" and did not move "from Devils Lake with the intent to frustrate Jason's contact with the children." Based on its weighing of all of the best interest factors, the court determined it is in the best interests of the children that Mari Sayler be awarded primary residential responsibility.

[¶24] As already concluded, because residential responsibility had not previously been established, a motion to relocate was not necessary. Similarly, consideration of the *Stout-Hawkinson* factors was not necessary. "The *Stout-Hawkinson* factors are designed to address the best interests of the child for cases in which a primary custodian has already been designated and the custodial parent wishes to move." *Maynard*, 2006 ND 36, ¶ 21; *see also* N.D.C.C. § 14-09-07 (statute governing motions for relocation applies when

7

primary residential responsibility or equal residential responsibility has been established). Generally, the *Stout-Hawkinson* factors need not be considered at the initial residential responsibility decision absent a request to relocate. *See Asiama v. Asumeng*, 2023 ND 114, ¶ 17, 992 N.W.2d 543 ("The *Stout-Hawkinson* factors are considered when a custodial parent requests to change the residence of a child to another state under N.D.C.C. § 14-09-07.").

[¶25] The issue before the district court was whether it was in the best interests of the children to live with Jason Sayler in North Dakota or Mari Sayler in Minnesota. *Marsden v. Koop*, 2010 ND 196, ¶ 9, 789 N.W.2d 531 ("An initial custody determination requires that the district court award primary residential responsibility of children to the parent who will better promote the best interests and welfare of the children."); *Wright*, 431 N.W.2d at 303 ("[An] original custody award revolves solely around the best interests of the children."). The court was required to make that determination by analyzing the best interest factors. N.D.C.C. § 14-09-06.2(1); *Marsden,* at ¶ 59 (Maring, J., concurring in part and dissenting in part) (stating "it would be appropriate to consider the parent's new location and home under the best interest factors" if the parent "has already relocated"). The court was not called upon to determine whether Mari Sayler could move to Minnesota; she was already living in Minnesota—a fact the court considered when it addressed the best interest factors.

[¶26] We conclude the district court did not err by determining residential responsibility under the best interest factors without making separate findings under the *Stout–Hawkinson* relocation factors.

[¶27] We are cognizant a party may try to abuse this precedent by unilaterally moving with the child prior to initiating proceedings. However, we have explained a "district court may consider the intention of the parent [moving] with the child in judging the child's best interests under [N.D.C.C.] § 14-09-06.2." *Maynard*, 2006 ND 36, ¶ 21; *see also* N.D.C.C. § 14-09-6.2(1)(m) (under the best interest factors a court considers "[a]ny other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute"). Courts should consider a parent's unilateral move when they

8

consider "all factors affecting the best interests and welfare of the child." N.D.C.C. § 14-09-06.2(1); *see also Schneider v. Lascher,* 899 N.Y.S.2d 479, 481 (N.Y. App. Div. 2010) (explaining mother's prior relocation "is a very important factor among the constellation of factors to be considered in arriving at a best interests determination" in initial custody determination) (quotation omitted)). The purpose or motive for a unilateral move is one of the many factors courts should consider and weigh when addressing the factually complex, and extremely important, determination of parental responsibility.

D

[¶28] Jason Sayler argues the district court's reliance on the conditions created by the interim order was improper because it "used the no[n]-appealable temporary order to determine the children were established in a new community and that remaining in that community would be in their best interest."

[¶29] In *Odegard v. Odegard,* 259 N.W.2d 484, 485 (N.D. 1977), we recognized "temporary-custody orders have a tendency to become permanent-custody orders[.]" This is partly due to "concern for the physical and psychological stability of the child. One parent's custody of the child while the divorce is pending may result in the creation of emotional bonds and security in one's surroundings which are desirable to perpetuate in the permanent custody order." *Catlin v. Catlin*, 494 N.W.2d 581, 585 (N.D. 1992). However, we have also stated, "Although stability is one of the best-interest factors, it is only one of the factors." *Schlieve v. Schlieve*, 2014 ND 107, ¶ 22, 846 N.W.2d 733 (rejecting argument it was not in the children's best interests to disrupt the stability established by the interim order). The best interest factors balance these, at times, conflicting concerns.

[¶30] "[W]e have stated that relying on a parent's primary caretaking pursuant to an interim order might be improper." *Peek v. Berning*, 2001 ND 34, ¶ 10, 622 N.W.2d 186. However, we have declined to decide this issue. *See id.*; *see also Kjelland v. Kjelland*, 2000 ND 86, ¶ 10, 609 N.W.2d 100 (explaining reliance on parent serving as primary caretaker pursuant to an interim order

may be improper but "we need not decide that issue because the trial court did not rely on [father] serving as the primary caretaker since the interim order").

[¶31] Jason Sayler argues the district court prejudicially relied upon the interim order when it found "Mari [continues] to provide for the children, having taken them to Austin, Minnesota to move in with her parents." He argues Mari Sayler unilaterally moved the children to Minnesota and he "was not able to provide for his children in the normal fashion[.]" However, the court found "Mari had been the parent staying at home with the children and providing for their needs, with Jason providing caretaking duties when possible. Mari is continuing to provide for the children, having taken them to Austin, Minnesota to move in with her parents." The court ultimately found this factor favored neither party. Thus, in determining primary residential responsibility, the court did not improperly rely on Mari Sayler serving as the primary caretaker during the interim period.

[¶32] To the extent Jason Sayler argues it is improper to use a non-appealable "temporary order to determine the children were established in a new community and that remaining in that community would be in their best interest," we have previously relied upon the forward-looking and backward-looking best interest factors. We have explained:

> When analyzing factor (e), the court must examine "[t]he permanence, as a family unit, of the existing or proposed custodial home." N.D.C.C. § 14-09-06.2(1)(e). "Although overlap exists between factors (d) and (e), factor (e) uses a forward-looking approach to the stability of the family unit, its interrelations and environment, versus the backward-looking factor (d)." *Eifert* [*v. Eifert*], 2006 ND 240, ¶ 11, 724 N.W.2d 109. Factor (e) focuses on the children's future prospects for a stable family environment. *Id.* Interaction and interrelationships with parents and relatives are also considered under factor (e). *Id.*

*Lindberg v. Lindberg*, 2009 ND 136, ¶ 13, 770 N.W.2d 252; *see also Jelsing*, 2007 ND 41, ¶ 14 ("Although factor (d) uses an approach looking at the past, there is an overlap between factors (d) and (e), the permanence of the existing or proposed custodial home.").

[¶33] When considering the best interest factors, the district court considered events that occurred before and after the interim order, including that Mari Sayler moved the children from North Dakota to Minnesota, the move "changed the location and environment of the children" and "upset" the children's continuity, and the reasons she moved. These, and other factors considered by the court, were relevant to the best interest factors under N.D.C.C. § 14-09-06.2(1). We conclude the court did not err by improperly relying on the interim period when analyzing the best interest factors.

III

[¶34] Jason Sayler argues the district court's findings on the best interest factors and decision-making authority are clearly erroneous.

[¶35] "A district court's primary residential responsibility decision is a finding of fact that we analyze under the clearly erroneous standard of review." *Kershaw v. Finnson*, 2022 ND 165, ¶ 9, 980 N.W.2d 40. "A district court's ruling on decisionmaking is also a finding of fact, subject to the clearly erroneous standard." *Taylor v. Taylor*, 2022 ND 39, ¶ 20, 970 N.W.2d 209.

[¶36] "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if this Court, on the entire record, is left with a definite and firm conviction a mistake has been made." *Kershaw*, 2022 ND 165, ¶ 9 (quoting *Vetter v. Vetter*, 2020 ND 40, ¶ 8, 938 N.W.2d 417). "We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct." *Berdahl v. Berdahl*, 2022 ND 136, ¶ 6, 977 N.W.2d 294 (quoting *Holm v. Holm*, 2017 ND 96, ¶ 4, 893 N.W.2d 492). "A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Id.* (quoting *Holm*, at ¶ 4). "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial primary residential responsibility decision merely because we might have reached a different result." *Kershaw*, at ¶ 9 (quoting *Vetter*, at ¶ 8).

## A

[¶37] Jason Sayler argues the district court erred in weighing best interest factors (d), (e), (f), and (h). The court found factors (d), (e), and (h) favored neither party and factor (f) favored Mari Sayler.

[¶38] Based on our review of the record, we conclude sufficient evidence in the record supports the district court's findings. Jason Sayler asks this Court to reweigh the evidence. "This Court will not reweigh the evidence or reassess credibility when there is evidence to support the district court's findings, and we will not reverse the decision merely because we might have reached a different conclusion." *Porter v. Porter*, 2006 ND 123, ¶ 5, 714 N.W.2d 865. The court's findings are not clearly erroneous.

## B

[¶39] Jason Sayler argues the district court erred in awarding final decision-making authority to Mari Sayler.

[¶40] "A parenting plan must include a provision relating to decisionmaking responsibility, N.D.C.C. § 14-09-30(2)(a), and that responsibility must be allocated in the best interests of the child, N.D.C.C. § 14-09-31(2)." *Dick v. Erman*, 2019 ND 54, ¶ 14, 923 N.W.2d 137 (citation omitted). "With two parents, there is always a potential for the parties to reach a point of impasse when it comes to decisions about their child." *Id.* at ¶ 15 (holding "[e]ventually a decision must be made, and we are not left with a definite and firm conviction a mistake was made regarding the district court's determination of decision-making responsibility").

[¶41] Here, the district court ordered:

> The parties will make non-emergency health care decisions for the children jointly. . . . In the event of a dispute, the parties will work with a qualified third party appropriate . . . to reach resolution. If there is still disagreement as to non-emergency health care decisions, Mari will have the final decision making authority, but only after good faith efforts by the parties to make a joint decision and work with a qualified third party.

12

[¶42] After reviewing the record, and considering the district court awarded Mari Sayler primary residential responsibility, we are not left with a definite and firm conviction a mistake has been made. The court's award of final decision-making authority to Mari Sayler is not clearly erroneous.

IV

[¶43] Jason Sayler argues the district court abused its discretion by awarding attorney's fees to Mari Sayler. He argues the court's findings are inadequate to support the award of attorney's fees. We agree.

[¶44] "Under N.D.C.C. § 14-05-23, a district court has broad discretion to award attorney's fees in a divorce action." *Friesner v. Friesner*, 2019 ND 30, ¶ 20, 921 N.W.2d 898. In exercising its discretion whether to award attorney's fees under N.D.C.C. § 14-05-23, "the court must balance one party's needs against the other party's ability to pay." *Harvey v. Harvey*, 2016 ND 251, ¶ 7, 888 N.W.2d 543. "In balancing the parties' needs and ability to pay, the district court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case." *Id.* (cleaned up).

[¶45] "An award of attorney's fees requires specific findings supported by evidence of the parties' financial conditions and needs." *Harvey*, 2016 ND 251, ¶ 7; *see also Martinson v. Martinson*, 2010 ND 110, ¶ 14, 783 N.W.2d 633 ("A court must make specific findings supported by evidence of the parties' financial needs and conditions to award attorney fees."); *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 203 (N.D. 1995) ("The awarding of attorney's fees must be supported by evidence setting forth information regarding the parties' financial conditions and needs."). "An award will not be reversed on appeal unless the court abuses its discretion." *Harvey*, at ¶ 7. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

[¶46] The district court awarded Mari Sayler an additional $5,000 in attorney's fees, finding:

[Mari Sayler] was a stay-at-home mother for a majority of the marriage, and has only recently reentered the work force. Jason has been employed as an attorney, and was the sole economic provider for the family up until the separation. Mari has argued that Jason's decision and behavior refusing to correspond with Mari during the pendency of this divorce has unreasonably and unnecessarily increase[d] the attorney's fees incurred by both parties.

Because Jason's income is currently over three times that of Mari's, and because Mari has demonstrated her need for assistance with attorney's fees and Jason's ability to pay part of her attorney's fees, the Court will award Mari an additional amount for her attorney's fees of $5,000 from Jason . . . . The Court is awarding this reduced amount, as compared to the amount requested by Mari, because the Court is aware that Jason is also responsible for payment of his own attorney's fees as well.

[¶47] The district court summarily addressed the appropriate factors, concluding, "Mari has demonstrated her need for assistance with attorney's fees and Jason's ability to pay part of her attorney's fees[.]" However, the court did not make specific findings regarding Mari Sayler's income and expenses to support its conclusion she needed assistance in paying her attorney's fees. Similarly, the court found Jason Sayler had a net monthly income of $5,646, but did not address his claimed monthly expenses of $6,272 when concluding he had the ability to pay part of Mari Sayler's attorney's fees. The court noted the parties' relative income in general terms, stating "Jason's income is currently over three times that of Mari's," but made no findings regarding how their relative incomes impacted Mari Sayler's needs or Jason Sayler's ability to pay. The court also noted Mari Sayler argued Jason Sayler's actions unnecessarily increased both party's attorney's fees. However, the court made no finding whether Jason Sayler's actions unnecessarily increased the party's attorney's fees.

[¶48] "A district court has discretion to award attorney's fees under N.D.C.C. § 14-05-23 based on the parties' relative abilities to pay, but it must make specific findings regarding the nonmoving party's ability to pay and the moving party's need." *O'Keeffe v. O'Keeffe*, 2020 ND 201, ¶ 22, 948 N.W.2d 848.

14

"Implied findings are insufficient for an award of attorney's fees[.]" *Nieuwenhuis v. Nieuwenhuis*, 2014 ND 145, ¶ 31, 851 N.W.2d 130. When the court does not provide sufficient findings, "[w]e are left to speculate whether factors were properly considered and the law was properly applied, leaving us unable to perform our appellate function." *Deyle v. Deyle*, 2012 ND 248, ¶ 23, 825 N.W.2d 245. "Without the necessary findings, the award of attorney's fees must be reversed and remanded." *Nieuwenhuis*, at ¶ 31 (reversed and remanded because the court "failed to provide an explanation or findings to support its award of attorney's fees"); *see also Harvey*, 2016 ND 251, ¶ 9 (reversing and remanding because the court "did not provide the required analysis for attorney's fees under N.D.C.C. § 14-05-23"); *Datz v. Dosch*, 2014 ND 102, ¶ 23, 846 N.W.2d 724 (holding the court abused its discretion because it only made findings on one party's ability to pay without balancing the other party's need); *Deyle*, at ¶ 23 (remanding for reconsideration and a "reasoned explanation" after concluding the court did not adequately explain its decision).

[¶49] Because the district court did not make sufficient findings to support its award of attorney's fees, we reverse the court's award of attorney's fees and remand for the court to make further findings on its award of attorney's fees.

V

[¶50] We have considered the parties' remaining arguments and conclude they are either without merit or not necessary to our decision. We affirm the parts of the amended judgment awarding primary responsibility and decision-making authority. We reverse the part awarding attorney's fees. We remand the case for further findings.

[¶51] Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr

Filed by Clerk of Supreme Court 08/21/23